**AMERICAN MOTORS SALES CORPORATION, a Corporation, Appellant,**

v.

**L. G. SEMKE, Appellee.**

**No. 8797.**

United States Court of Appeals
Tenth Circuit.

Sept. 28, 1967.

Rehearing Denied Nov. 3, 1967.

C. Harold Thweatt, Oklahoma City, Okl. (William E. Carroll, Detroit, Mich., William J. Holloway, Jr., Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl., on the brief), for appellant.

William J. Otjen, Jr., Enid, Okl. (Loyd Benefield, of Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appeal is from a judgment entered upon a jury verdict in an action brought under 15 U.S.C. §§ 1221–1225, commonly referred to as "The Automobile Dealers' Day in Court Act." The judgment and verdict were in favor of appellee-plaintiff, Semke, and against appellant-defendant, American Motor Sales Corporation.

Semke, formerly a franchised dealer for American Motors, by his complaint, in pertinent part, alleged: That during the years 1959, until late in 1962, American Motors pursued a course of action that coerced and intimidated him into terminating his dealership agreement; that American Motors breached the conditions of the Franchise Agreement; that such course of conduct was in violation of 15 U.S.C. § 1222 and as a result of such conduct he had suffered a monetary loss of $600,000.00 which he sought to recover from American Motors. Other claims for damages are alleged but not allowed by the jury and not pertinent here. The applicable part of the statute [1] upon which the cause of action is based provides the dealer with two basic causes of action against an automobile manufacturer. These are for failure of the manufacturer to act in "good faith" to perform or comply with the terms of the provisions of the automobile dealer's franchise or in terminating, cancelling or not renewing the franchise. Semke apparently sought damages under both of these causes of action, primarily for the loss of future profits resulting from the termination of the Franchise Agreement. In addition he sought to recover damages resulting from American Motors' refusal to approve an assignment of his franchise to another dealer in Enid and also asked for punitive and exemplary damages. From the record we glean that some kind of a pretrial was had in the case but we find no pretrial order. We must observe that this case was certainly an appropriate one for the use of effective pretrial procedure. There the claims of the parties would be clearly set out, the triable issues would be agreed to by parties or delineated by the trial judge and everyone concerned with the case, including this court, would derive benefit. We believe the foregoing comment is appropriate because the form of verdict used does not reflect all of the claims made by the appellee-plaintiff in his complaint and we are unable to accurately tell from the record what happened to the cause of action for alleged breach of the Franchise Agreement or what prompted the trial judge to submit the case as he did.[2] The appellee does not complain about the form of verdict or the method of submission so actually our only concern here is adequacy of the instructions given and the sufficiency of the proof to support the verdict returned. The jury's verdict awarded $18,000.00 for loss of profits resulting from the termination of the Franchise Agreement.

Appellant claims generally, as error, the overruling of its motion for a directed verdict and refusal to set aside the verdict of the jury. Specifically and to support these points, appellant urges error by the trial court in the ad-

---

1. The Automobile Dealers' Day in Court Act provides that: "An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956, to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, cancelling, or not renewing the franchise with said dealer: *Provided*, that in any such suit the manufacturer shall not be barred from assert-

ing in defense of any such action the failure of the dealer to act in good faith." 15 U.S.C. § 1222.

2. The form of verdict submitted and returned is as follows:
   "We, the Jury, find in favor of the plaintiff and against the defendant, American Motors Sales Corp., and fix the amount of their recovery as follows:
   (a) $18,000.00 for loss of profits of the business as a result of termination of the Franchise Agreement.
   (b) $None for loss suffered for failure of defendant to accept purchaser of the business by plaintiff.
   (c) $None for punitive or exemplary damages.
   January 21, 1966   J. Branter (Foreman)
   Filed January 21, 1966."

mission of certain evidence concerning warranty claims and in the trial court's instructions to the jury. It also points to a number of other claimed trial errors by the trial court; however, none of these are substantial enough to merit comment.

To affirm the judgment this court must first resolve two questions in favor of the appellee. The first of these is whether the Act contemplates recovery by a plaintiff-dealer for termination when the termination is apparently initiated by the plaintiff-dealer. The second is whether the evidence adduced at the trial is legally sufficient to support a finding of lack of "good faith" by the appellant-defendant.

■ A brief general discussion of this statutory cause of action seems appropriate. We find no case expressly holding that the Act covers a situation where the manufacturer forces a termination by a dealer under circumstances which would warrant a court in concluding that even though in appearance the termination was voluntary it was in fact coerced by the manufacturer. A California District Court assumed this fact without deciding it. Pinney & Topliff v. Chrysler Corp., D.C., 176 F.Supp. 801. In that case the court found that the evidence did not show any acts of coercion or intimidation by Chrysler and thus the court did not need to expressly decide the above question. In support of allowing the action is a statement from the legislative history that "Manufacturer coercion or intimidation or threats thereof is actionable by a dealer. * * * where it relates to the termination, cancellation, or nonrenewal of the dealer's franchise." U.S.Code Congressional and Administrative News 1956, p. 4603. If coercion or intimidation does compel the dealer to terminate his

franchise then certainly "it relates" to the termination and would thus appear to be actionable by the dealer. The lower court instructed the jury that it had to find that the termination by the plaintiff of his dealership was coerced and forced upon him "and that except for the coercive acts of intimidation by defendant's agent he would not have terminated same" before he could recover for the alleged wrongful franchise termination. We believe it reasonable to interpret the Act as covering an action based on a wrongful termination of a franchise where the dealer was forced to terminate because of the coercive and intimidative acts of the manufacturer.

The next question is whether the evidence adduced by appellee is sufficient to support the jury finding of lack of "good faith" in American Motors' actions. Good faith is defined in section 1221(e) of the Act.[3] This statutory definition has been construed literally by the courts so that the existence or non-existence of good faith must be determined in a context of actual or threatened coercion or intimidation. 7 A.L.R.3d 1182. Judicial treatment of the factual question of what constitutes a lack of good faith has been primarily negative as courts have set out what does not constitute a lack of good faith rather than setting standards of what constitutes lack of good faith. Courts have, for example, held that a threat of cancellation if there should be a prolonged failure on the part of the dealer to heed the recommendations or yield to persuasions of the manufacturer that the dealer make a bona fide effort to comply with its undertakings does not constitute coercion or intimidation, Woodard Motor Co. v. General Motors Corp., 5 Cir., 298 F.2d 121, cert. denied 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288; that it is not coercion or intimida-

---

3. "The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and ethical manner toward each other so as to guarantee the one party's freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, that recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith."

tion for a manufacturer to refuse to accept a person as a dealer because of an honest belief that the prospective dealer lacks either the ability or the financial resources to be a successful dealer, Pierce Ford Sales Co., Inc. v. Ford Motor Company, 2 Cir., 299 F.2d 425, cert. denied 371 U.S. 829, 83 S.Ct. 24, 9 L.Ed.2d 66; that a manufacturer may terminate a franchise because it was shown that the dealer's sales performance was substandard both in terms of the objective assigned to him and in comparison with other dealers and that he failed to live up to his contractual commitment to provide adequate facilities, Milos v. Ford Motor Company, 3 Cir., 317 F.2d 712, cert. denied 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 125; and that it was not coercion or intimidation for a manufacturer to terminate the franchise of a dealer when it was shown that the dealer failed to fulfill his contractual obligations relating to sales and when he admittedly failed to meet the sales objectives established under the franchise, there being no claim that the criteria established therein were unreasonable, unfair, oppressive, or arbitrary. Kotula v. Ford Motor Co., 8 Cir., 338 F.2d 732, cert. denied 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273.

Congressional comments concerning good faith are enlightening. It is stated that: "The existence of coercion or intimidation depends upon the circumstances arising in each particular case and may be inferred from a course of conduct. For example, manufacturer pressure, direct or indirect, upon a dealer to accept automobiles, parts, accessories, or supplies which the dealer does not need, want, or feel the market is able to absorb, may in appropriate instances constitute coercion or intimidation. Similarly coercion or intimidation may be found where the manufacturer attempts to require the dealer to handle exclusively, or sell a specified quota of, parts, accessories, and tools made or approved by the manufacturer." U.S. Code, Congressional and Administrative News 1956, p. 4603.

In the instant case, appellee, in substance, alleged three basic types of conduct by appellant as proof of coercion or intimidation: (1) Refusal to supply him with automobiles unless he ordered unwanted American model automobiles; (2) refusal to honor and/or credit him with services performed under the warranty arrangements of the franchise agreement; and (3) refusal to approve a proposed assignment of his franchise. It would appear that only the first two of these allegations could be considered in determining the sufficiency of the proof to show that Semke was forced to terminate his franchise as the third allegation goes to actions taken after the decision to terminate had been made by him.

As to the first allegation, the evidence indicated that on November 6 a Mr. Adams, an employee of American Motors, refused to take a car order from Semke unless he ordered an American model automobile which he claimed he did not want. Appellee contended that such pressure had been placed upon him for a long period of time, i. e., that he had to order the American model cars which he did not want. Mr. Semke testified that "They made me scared I wouldn't get any cars unless I did abide by their decisions on Americans." This testimony of Mr. Semke was corroborated by the testimony of his sales manager, Jack McAndrews, who testified that "I would work this up on my own time and a lot of times I couldn't order the Classic like it states right here. They were not accepted unless I gave them an American order. It was just that simple." This testimony was also corroborated by Mary Singleton, appellee's bookkeeper. It was American Motors' contention that Semke had ordered three of the Americans prior to November 6 and was now refusing to accept such orders. The court instructed the jury to consider the effect of plaintiff's orders with defendant prior to November 6 and if they found that the plaintiff "voluntarily signed the projection

for new cars indicating he would need a certain number of American Make cars, and that the defendant's agent, Mr. Adams, relied thereon in ordering the factory to produce such cars * * * and the plaintiff refused to take them, then and in such event, the defendant would be justified in insisting that such cars be ordered as projected by plaintiff."

■ In this regard, the court also instructed "But on the other hand, if you find that the projection for the American cars was the work or efforts of the defendant through its agent, Mr. Adams, and that he coerced and intimidated the plaintiff or plaintiff's agent into signing same, then defendant would have no right to demand the purchase of the projected cars." There existed sufficient evidence to support a jury finding that pressure was brought to bear on plaintiff to take unwanted cars. Such action by a manufacturer comes clearly within the statute as is reflected by the legislative history of the Act mentioned above and thus amounts to coercive or intimidative acts and is sufficient to support a finding of lack of "good faith."

One other court has considered the effect of pressure on a dealer to take unwanted cars. In Kotula v. Ford Motor Co., 8 Cir., 338 F.2d 732, a dealer claimed that he was forced to take a car he didn't want and didn't get cars he ordered until he took such cars. The court, however, did not feel that this was causally connected to the termination of the dealer's franchise as the evidence indicated that defendant terminated the dealer's franchise because he had failed to live up to the franchise's provisions. The Kotula case is, therefore, distinguishable from the instant case in that the record here shows that Semke was considered a good dealer by American Motors and had not failed to live up to the franchise provisions. In any respect the question presented here is not whether the manufacturer was justified in terminating as in Kotula, but whether the manufacturer coerced the dealer into terminating.

■ Appellee's second allegation went to the difficulties between him and American Motors upon the matter of warranty repairs. He claimed that on numerous occasions an attempt was made to have Mr. Irwin, an agent for American Motors, authorize warranty work but that Mr. Irwin refused to authorize such work. The automobile owners in question were then forced to take their cars to other American Rambler dealers to have the warranty work done. In addition Semke testified as to incidents where he conferred with Mr. Irwin as to what should be done to various cars coming in under a new car warranty. In accordance with such conversations work was done on the cars but American Motors then refused to fully reimburse him for such work. The warranty agreement reads "The dealer agrees to install any repair parts supplied by Zone and required to fulfill conditions of the 'manufacturer's warranty' on any motor vehicle without charge to the owner thereof. If the replaced parts are returned to Zone and found by it to be defective, Zone will pay or credit to dealer the current flat rate for installing any such repair parts as is specified in the current price list bulletin in effect at the date of such installation." Appellant's argument concerning the warranty problem is that it did not warrant the car to the ultimate owner but that the warranty was to the dealer who in turn warrants the car to the ultimate purchaser. Therefore, it was the dealer's obligation to do any warranty work on the cars and then seek reimbursement from appellant. However, it would seem proper for the jury to consider what transpired between Semke and Mr. Irwin, regarding the warranty work to be done on the cars in determining the appellant's overall course of conduct with Semke. It should be noted that the legislative history states that "The existence of coercion or intimidation depends upon the circumstances arising in

each particular case and may be inferred from a course of conduct." See U.S.Code, Congressional and Administrative News 1956, p. 4603.

■ Appellee's third line of evidence concerns appellant's refusal to approve the assignment of his franchise to Fidelity Motors, the Chrysler dealer in Enid, Oklahoma. One portion of the complaint was a claim for $25,000.00 in damages for loss of profits because of American Motors' refusal to approve this assignment of franchise. Appellant's argument is that the refusal did not show any act of bad faith as it was in conformity to a national policy established by it not to permit dual dealerships in areas having a planning potential in excess of 50. However, a Mr. Charles Davis, the Oldsmobile dealer in Enid as of 1966, testified as to a conversation with Mr. Adams, American Motors' agent, to the effect that an offer was made to Mr. Davis to dual his Oldsmobile with the Rambler line. It should also be noted that the court when Mr. Semke first testified to appellant's refusal to approve the franchise instructed the jury that the evidence was permitted solely for the purpose of tending to establish that one item where the plaintiff seeks the $25,000.00 damages and not as to any other part of the law suit. The trial court's instruction number 8 concerned this aspect of the case.[4] This instruction appears to be somewhat broad since as is noted above the action of appellant in refusing to approve of the assignment cannot relate to the other cause of action for damages for coercion and intimidation in forcing Semke to terminate his business since this action occurred after Semke's decision to terminate had already been made. However, when giving consideration of the instruction to the jury when the evidence was first introduced, the evidence and instruction as a whole would not seem to mislead the jury so as to be prejudicial to appellant. In any respect there was no objection made to this instruction by the appellant at the time of trial.

■ In view of the above discussion we feel that the evidence adduced by Semke in support of his first and second allegations is sufficient to support the jury's verdict.

■ Appellant also urges error in the giving of instructions 10, 11 and 12. From the record before us, we have some doubt whether appellant in objecting to those instructions complied with the clear mandate of Rule 51, F.R.Civ.P. Sometime prior to the instructing of the jury appellant submitted twenty-five requested instructions. Prior to the arguments to the jury appellant, outside the presence of the jury, made a record objecting specifically to these three instructions which the trial judge then proposed to give. After the instructions were actually given the record shows only that counsel for appellant "renewed their objections to 10, 11 and 12." The precise nature of these objections is not reflected in the record. This court has made it abundantly clear that the Rule requires specific objections after the instructions have been given and prior to the time the jury retires, regardless of what objections have been made at any prior stage of the case.[5] We should note that this

---

4. This instruction was as follows:

"The defendant was not compelled to consent to a transfer of a dealership franchise merely because plaintiff obtained a purchaser who was financially able to buy the business. Defendant did not have to consent that its line of automobiles be handled in Enid by a dealer who was handling another line of automobiles.

"However, should the jury find the defendant had dual dealerships in other areas and arbitrarily and in bad faith refused to consent to the transfer of the Semke Franchise to Fidelity Motors for the purpose of intimidating and coercing plaintiff into going out of business, then you may consider this matter along with all the other evidence in the case in arriving at your verdict."

5. Chiodo v. General Waterworks, 10 Cir., 380 F.2d 860, and cases cited in note 2.

appeal, for the first time, presents to this court a cause of action brought under the "Automobile Dealers' Day in Court Act" and for that reason and without committing this court to the practice of ignoring the clear mandate of the Rule we propose to briefly discuss the questioned instructions.

The court's instruction number 10 states: "You are further instructed that should you find from the preponderance of the evidence, and under these instructions, that the defendant, American Motors Sales Corporation, did, contrary to the provisions of the law, use unfair, coercive and intimidating tactics and did refuse to accept and honor and credit this plaintiff with services performed by him under the franchise and warranty given to new car owners by the said defendant, and on occasions forced the customers of this plaintiff to go to other dealers in neighboring cities, where the defendant would honor their warranties, and thereby breached its franchise agreement with this plaintiff; and that the defendant failed to act in good faith in performing or complying with any of the terms or provisions of the franchise, then and in that event, your verdict should be for the plaintiff and against this defendant." This instruction apparently authorizes the jury to find for plaintiff solely if there were breaches of the warranty agreement between plaintiff and defendant or if such constituted acts of discrimination or collusion against the plaintiff. This is consistent with one of the theories set forth in appellee's complaint, i. e., recovery for breach of the Franchise Agreement. However, this did not appear to be the theory upon which the case was sub-

mitted to the jury under the form of verdict used. As stated above, the act in question allows for two causes of action against the dealer, i. e., for failing in good faith to perform certain provisions under the Franchise Agreement or for acting in lack of good faith in terminating or cancelling the Franchise Agreement. At the conclusion of the evidence in the case apparently appellee did not claim any damages for appellant's failure to perform any of the provisions of the warranty agreement. His sole claim then was for damages from the termination of the Franchise Agreement. Therefore, while the warranty disagreements should be considered as an aspect in establishing that American Motors coerced Semke into terminating his Franchise Agreement, the mere fact of warranty difficulties does not by itself constitute a reason for allowing recovery under the theories of the causes of action presented to the jury. While the possibility for confusion existed, we feel that the instruction cannot be considered prejudicial in view of the jury's verdict which awarded Semke damages only "for loss of profits of the business as a result of termination of the Franchise Agreement."

Appellant, American Motors, also argues that damages of future profits are not appropriate in this case and that instruction number 11[6] allowing such damages was in error. As support for this argument appellant cites numerous contract cases. However, we do not believe that such cases are binding authority for causes of action under the Automobile Dealers Day in Court Act for termination of the dealership franchise for the simple reason that it is clearly established that the statute

6. Instruction number 11 reads in pertinent part as follows:

"* * *

"And in fixing the damages, if any, which you find from a preponderance of the evidence were sustained by plaintiff, as a proximate result of 'bad faith' of the defendant, as defined in these instructions; you may take into consideration that period of time, which in your judgment, from a preponderance of the evidence, the profits, if any, would have accrued to plaintiff, in this case, had the franchise not been terminated; not to exceed in any event, the amount sued for on this count, namely, $600,000.00."

"* * * *."

creates a new cause of action and is not merely a new remedy for breach of contract. Grove Motors Co., Inc. v. Studebaker-Packard Corp., 3 Cir., 328 F.2d 645. In one case, Garvin v. American Motors Sales Corp., W.D.Penn., 202 F.Supp. 667, reversed on other grounds, 3 Cir., 318 F.2d 518, damages were allowed for future profits; the court stating that "No basis exists to construe the statute as limiting damages to a single year." While there is no express provision in the statute it seems clear that the Act contemplates giving damages to the dealer when his franchise is terminated. To be meaningful, such damages must include the amount of money that the dealer could have obtained in the future from the profits from his franchise. Therefore, we believe that instruction number 11 given as to the law applicable to recovery for termination correctly stated the law.

██ Appellant also argues that it was error to give instruction 12[7] allowing punitive damages. We feel, however, that a decision concerning this allegation is not necessary since the jury did not award Semke any punitive damages and, therefore, appellant was not prejudiced by the giving of this instruction.

In conclusion we find that appellee alleged a valid cause of action under 15 U.S.C. § 1222 and that sufficient evidence existed to support the jury verdict. Appellant's allegations as to prejudicial error by the trial court are without merit and the case is affirmed.

---

7. Instruction number 12 reads as follows: "Under the laws of this state, in addition to actual damages suffered by a plaintiff, where the defendant or defendants have been guilty of oppression or malice, the jury may give damages for the sake of example and by way of punishing the party or parties responsible for said damages. In this connection, you are instructed that if you should first find actual damages in favor of the plaintiff, and you should further believe and find that in committing the acts com-

plained of, the defendants herein were guilty of oppression or malice, you may in addition to such actual damages, give damages against them for the sake of example and by way of punishing them, but such additional damages can in no event exceed the sum sued for on account thereof, namely, $100,000.00.
"In this connection, you are instructed that malice is the doing of a wrongful act intentionally and without just cause or excuse."