John Paul JONES and Ruth J. Rubel
Jones, Appellants,

v.

The UNITED STATES of America,
Appellee.

No. 9153.

United States Court of Appeals
Tenth Circuit.

Dec. 4, 1967.

Rehearing Denied Feb. 2, 1968.

Claude L. Rice, Kansas City, Kan., and Emmet A. Blaes, Wichita, Kan. (Thad E. Nugent, Kansas City, Kan., and James L. Baska, Olathe, Kan., with them on brief), for appellants.

Willy Nordwind, Jr., Washington, D. C. (Mitchell Rogovin, Lee A. Jackson and Gilbert E. Andrews, Washington, D. C., with him on brief), for appellee.

Before MURRAH, Chief Judge, and JONES * and HILL, Circuit Judges.

MURRAH, Chief Judge.

This action to recover "erroneously" refunded federal income taxes was instituted by the United States under § 7405(b) of the Internal Revenue Code of 1954 against Ruth J. Rubel Jones and her husband John, appellants. The sole issue submitted to the jury was whether the income on which the subject taxes were paid was ordinary income or capital gains. This appeal is from a judgment on a jury verdict in favor of the United States. We affirm.

These basic facts were stipulated. Ruth and John Jones filed joint income tax returns in 1956 and 1957, reporting as ordinary income sums totaling $86,-101.09 received by Ruth from Continental Casualty Company pursuant to an instrument which we will refer to as the "five percent agreement". In that document Ruth agreed for a period of ten years "to represent, act and serve as a consultant for Continental on matters relating to the soliciting, negotiating, underwriting and placing of Teachers' Group Insurance as shall be requested by Continental", and Continental agreed to pay Ruth "for said services a sum equal to 5% of the premiums on any insurance written through Continental by Forrest T. Jones or the Ruth J. Rubel Agency, Inc." In 1960 Ruth and John filed a claim for refund, asserting that the sums reported as ordinary income were actually installment sale proceeds from the sale of Ruth's insurance business to one Forrest T. Jones and thus taxable as long-term capital gains. The Internal Revenue allowed in part the claim for refund on that theory, and remitted $15,992.45 to the taxpayers. Subsequently, however, the Government changed its mind and determined that the sums received by Ruth were properly taxable as ordinary income. This suit was then instituted to recover the amount of the refund.

These further relevant facts were either agreed upon or undisputed. Prior to 1953, Ruth was the owner of the Ruth J. Rubel Agency, a sole proprietorship specializing in accident and health insurance coverage for teachers' groups in the states of Kansas and Missouri. Continental Casualty Company was the underwriter of the group insurance, and paid Ruth 22½% of the premiums as commission on group policies written by her. In August, 1953, the State of Missouri granted a certificate of incorporation to the Ruth J. Rubel Agency, Inc., and pursuant to an agreement dated August 19, Ruth transferred to the new corporation all the assets of the Ruth J.

* Sitting by special designation from the Fifth Circuit.

Rubel Agency, including the agency and commission contracts with Continental, in exchange for 100% of the corporation's capital stock. The assets received from Ruth were recorded on the books of the new corporation as having a value of $25,000.

Prior to incorporation of the agency, Ruth had commenced negotiations with one Forrest T. Jones [1] for the sale of her insurance business. Continental apparently played an important role in these negotiations.[2] By an Agreement of Sale bearing date of August 29, 1953, Ruth agreed to sell and Forrest agreed to buy all of Ruth's stock in the Ruth J. Rubel Agency, Inc. The instrument expressly provided that "The aggregate purchase to be paid by the Buyer to the Seller for the stock * * * shall be the sum of Twenty-Five Thousand Dollars ($25,-000), to be paid in cash at the time hereinafter specified." About three years later, the instrument was amended by a document in which Ruth and Forrest agreed that the $25,000 purchase price recited in the Agreement of Sale was incorrect, and that the purchase price actually agreed upon by the parties was $50,000.

Contemporaneously with the Agreement of Sale, the parties entered into the so-called "five percent agreement", and also a "guaranty" agreement whereby Forrest guaranteed to Ruth that the payments received by her under the five percent agreement would not be less than $15,000 per year, and that in the event the payments did not equal that amount, Ruth would have an option to purchase all of the capital stock of the Ruth J. Rubel Agency, Inc. for the sum of $1.00.

On trial of the case Ruth argued that the substance of the transaction was the sale of her insurance agency to Forrest; that the $50,000 to be paid under the amended Agreement of Sale was merely a down payment; and that the five percent payments, guaranteed to be at least $15,000 per year, were installment payments on the total purchase price. The Government, on the other hand, argued that Ruth was merely selling her stock in the Ruth J. Rubel Agency, Inc., pursuant to the Agreement of Sale for a total purchase price of $50,000, and that the five percent agreement and the guaranty document constituted a separate agreement between Continental and Ruth for consulting services. The $50,000 payment under the Agreement of Sale is concededly capital gains and is not in suit. The factual issue submitted to the jury was whether the amounts received in 1956 and 1957 by Ruth from Continental (i. e., $86,101.09) were part of the sale price of Ruth's insurance agency, hence capital gains, or compensation for services rendered, hence ordinary income. This clear-cut issue was succinctly presented to the jury in instructions which told them that "in determining whether the transaction between Mrs. Ruth Rubel Jones as seller and Forrest Jones as buyer was a single transaction implemented by the separate agreements * * *, or whether the agreement for the sale of stock to Forrest Jones * * * and the agreement by which Mrs. Jones received five percent of the premium income of the insurance agency * * * were separate undertakings, entered into for separate purposes, you will consider not only the written instruments themselves, but also all other facts and circumstances in evidence in the case which will aid you in arriving at the truth." The jury returned a verdict for the Government, finding that the amounts received by Ruth were "ordinary income received for service which she rendered or agreed to render."

Despite laborious argument of the facts in the taxpayers' brief, they do not specifically question the sufficiency of the evidence on appeal. Indeed, we think the evidence amply supports the verdict

---

1. Forrest Jones is not related to either Ruth or John Jones.

2. Continental loaned Forrest the sum of $55,000. $5,000 was retained by Forrest and $50,000 was paid to Ruth.

of the jury. The only arguable points here are the rulings of the trial judge excluding certain proffered exhibits and testimony, and his refusal to give an instruction on "good will".

Taxpayers offered in evidence five exhibits representing an exchange of correspondence between one Osborne (Continental's assistant Comptroller) and the office managers of Continental's branch offices in Kansas City and St. Louis, concerning problems that had arisen over the processing of Ruth's five percent payments. In substance, the correspondence directed the branches that in accordance with previous agreements between the parties,[3] the 22½% commissions to which the Ruth J. Rubel Agency, Inc., was entitled would be reduced by 5% and that this amount would be retained on the company ledgers until a future date when it would be remitted directly to Ruth Jones. The taxpayers argue that the exclusion of the exhibits as having no probative value is reversible error because the correspondence would have tended to prove that the five percent payments were being paid by Forrest as part of the purchase price of the agency, not by Continental as compensation for services rendered, and that Continental was merely the conduit by which the deferred payments were transmitted.

■ It is fair to say that the reasons for the introduction of these exhibits are far more clear in the taxpayers' brief than when offered to the trial judge. It may well be that in retrospect the letters were relevant to the nature of the transaction between Forrest and Ruth, but we must consider their relevancy here in the same context in which they were offered to and considered by the trial judge. The record shows that when each of these exhibits was offered into evidence and objected to as having no probative value, counsel for the taxpayers responded that they were inter-office correspondence "with respect to problems that arise with the branch offices and Continental Casualty Company on the five percent." No other explanation or claim was made for the exhibits. It was certainly incumbent upon counsel to fully apprise the trial judge of the purposes for which the exhibits were offered and their probative value for such purposes. His explanation did not do so. In these circumstances we certainly cannot say that the trial judge's exclusion of the exhibits was erroneous.

■ Taxpayers next complain of the trial court's exclusion of the deposition testimony of Paul Fisher, head of Continental's group insurance division, pertaining to his knowledge about all consultants employed by Continental.[4] The argument appears to be that Fisher's testimony was relevant to show that Ruth was not actually employed by Continental as a consultant, and thus the five percent payments were received by her as part of the purchase price. Again, in retrospect, this testimony may have

---

3. In a written document dated August 20, 1953, Continental consented to the transfer by Ruth of the agency and commission contracts to the Ruth J. Rubel Agency, Inc., on the condition that, if Ruth should dispose of her stock in the new corporation, then all commissions would be reduced by 5%. In an instrument dated August 31, 1953, the Ruth J. Rubel Agency, Inc., and Continental agreed that since Ruth had sold all her stock in the Ruth J. Rubel Agency, Inc. to Forrest Jones, all commissions due the agency would be reduced by 5%.

4. The following testimony of Fisher was excluded as irrelevant: "Q. Could you state the name of all the consultants to your knowledge that were employed by Continental Casualty Company at any time? A. Mr. Milt Monash. Q. And will you state also their addresses or where they can be located? A. He lives in Atherton, California. And Mr. Densdale Walker, he lives in California, in Los Angeles, and I think Mr. Bruckner Chase was employed as a—more of a promotional consultant. When you get into that area there is a lot of others like advertising agencies and people like that. * * * Q. Other than advertising agencies, are these all the people that you know of that were employed as consultants? A. That's all I know about that I recall.

some relevancy. But it was remote, and, moreover, cumulative of other evidence; it added nothing new to the taxpayers' case. See Titanium Actynite Industries v. McLennan, 10 Cir., 272 F.2d 667; Branding Iron Club v. Riggs, 10 Cir., 207 F.2d 720. The exclusion of this evidence does not appear to be inconsistent with substantial justice in the case. See Rule 61, F.R.Civ.P.; Jones v. Union Automobile Indemnity Ass'n of Bloomington, Ill., 10 Cir., 287 F.2d 27.

██ To establish the value of the insurance agency at the time of its sale to Forrest, Ruth called as an expert witness one David Kosh. His testimony was offered to show that the value of the agency was greatly in excess of $50,000. As to his qualifications, Kosh testified that his specialty field is "the economy, the finances, the regulation, evaluation and all the elements that go * * * [into the] pricing of utility services", but he admitted that he had "never made an evaluation of an insurance company." The trial judge refused to permit the witness to testify as an expert on the evaluation of this insurance agency. Suffice it to say that we find no abuse of the wide discretion accorded the trial court in determining the qualifications of a witness to testify as an expert in matters of this nature. See Whitehead v. Salyer, 10 Cir., 346 F.2d 207; Barnes v. Smith, 10 Cir., 305 F.2d 226.

Finally, the taxpayers complain of the trial judge's failure to include in his charge to the jury a requested abstract instruction on "good will". It is argued that such an instruction was essential to the taxpayers' theory of the case that the insurance agency had a "value" far in excess of the $50,000 amount recited in the Agreement of Sale, as amended.

During trial, counsel for the taxpayers indicated that proof would be offered to establish the value of the agency at the time of the sale as tending to show that the five percent payments were part of the purchase price. Over Government's objections, the trial judge tentatively ruled that "testimony of value, if it be competent testimony of the value, would have some bearing on that issue and would be properly admissible." Pursuant to this ruling, both taxpayers testified to the effect that, at the beginning of the negotiations with Forrest, Ruth made it clear that her asking price for the agency was three to four hundred thousand dollars. David Kosh was then called to give his opinion as to the value of the agency in 1953, but, as we have seen, the trial judge properly ruled that Kosh was not qualified to testify as an expert concerning the value of the agency. No other evidence of the agency's value was offered by the taxpayers.

██ At the conclusion of the court's instructions, counsel for taxpayers objected "to the omission of [his] requested instruction * * *. no. 7 * * * [the] instruction on good will." This form of objection raises serious doubts as to whether the trial judge was fully apprised of the nature of the objection as contemplated by Rule 51, F.R.C.P. See American Motors Sales Corp. v. Semke, 10 Cir., 384 F.2d 192; Chiodo v. General Waterworks, 10 Cir., 380 F. 2d 860; and Dunn v. St. Louis-San Francisco Railway Co., 10 Cir., 370 F.2d 681. But, conceding arguendo the propriety of the objection, we think the testimony regarding the asking price of the insurance agency, standing alone, formed a thin and tenuous basis for the abstract instruction on good will. Certainly, we cannot say in these circumstances that Judge Stanley erroneously refused to give the tendered instruction.

The judgment is affirmed.