433 F.2d 708
 1970 Trade Cases P 73,374
 R. A. HANLEY, as a partner in Friendly Chrysler-Plymouth, a
partnership, and R. A. Hanley, as Assignee of Motor France,
Inc., J. L. Vance, Assignee for the benefit of creditors of
Motor France, Inc., Plaintiffs-Appellants,
v.
CHRYSLER MOTORS CORPORATION, Defendant-Appellee.
 No. 607-69.
 United States Court of Appeals, Tenth Circuit.
 Nov. 6, 1970, Rehearing Denied Dec. 4, 1970.
 
 Don Studdard, El Paso, Tex. (Neil E. Weinbrenner, Las Cruces, N.M., on the brief), for plaintiffs-appellants.
 Robert M. St. John, Albuquerque, N.M., for defendant-appellee.
 Before LEWIS, PICKETT and HICKEY,* Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 This action, seeking to recover damages from Chrysler Motors Corporation (Chrysler), appellee, was filed on September 28, 1968 by former owners of Chrysler franchises at Alamogordo, New Mexico alleging violations of 15 U.S.C. 1221-1225.[1] Chrysler had granted dealership franchises to Friendly Chrysler-Plymouth, a partnership composed of William Racoosin, R. A. Hanley and J. Walsh Hanley,[2] for the sale of Plymouth, Chrysler and Imperial automobiles. In two separate orders the court sustained motions for summary judgment and entered judgment in favor of Chrysler accordingly.
 
 
 2
 The complaint alleged that on September 29, 1965 Chrysler failed to act in good faith in complying with the terms of the franchises and in terminating them. The acts relied upon to constitute the lack of good faith on the part of Chrysler are set forth in paragraph 6 of the second amended complaint as follows:
 
 
 3
 'a. Delay and refusal to acknowledge Motor France, Inc. as the direct dealer, Friendly Chrysler-Plymouth;
 
 
 4
 'b. Delay and refusal to acknowledge William N. Loftin as the General Manager of the dealer;
 
 
 5
 'c. Statements in disparagement of the dealership, its stock of parts, its value as a going business, etc.;
 
 
 6
 'd. Failure to disclose all the details of an arrangement with the new franchisee and conduct when negotiating for consent to the termination from Friendly Chrysler-Plymouth;'e. Interfering with and influencing the landlord-tenant relationship at Friendly Chrysler-Plymouth premises, all to the plaintiffs' detriment.'
 
 
 7
 The court held that, except as to paragraph 6(d), the three-year statute of limitations (15 U.S.C. 1223) barred recovery of damages resulting from the alleged acts of misconduct. Later the court, after further consideration of the pleadings, affidavits, depositions and other documents in the record, concluded that there was no remaining genuine issue of material fact and entered summary judgment for Chrysler.
 
 
 8
 As we noted in American Motors Sales Corporation v. Semke, 384 F.2d 192 (10th Cir. 1967), the applicable statute creates two separate and distinct causes of action: (1) the failure of the automobile manufacturer to act in good faith in performing and complying with the provisions of an automobile franchise, and (2) the lack of good faith in terminating, cancelling or not renewing the franchise with the dealer. The term 'good faith' is defined as:
 
 
 9
 '* * * the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.' 15 U.S.C. 1221(e).
 
 15 U.S.C. 1222 provides:
 
 10
 'An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: Provided, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.'
 
 
 11
 The legislative history of the Act illustrates that it was designed
 
 
 12
 'to give the dealer a right of action against the manufacturer, where the manufacturer fails to act in a fair and equitable manner so as to guarantee the dealer freedom from coercion, intimidation, or threats of coercion or intimidation. The term 'fair and equitable' as used in the bill is qualified by the term 'so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party.' In each case arising under this bill, good faith must be determined in the context of coercion or intimidation or threats of coercion or intimidation. Each party to an automobile franchise will have a special obligation to guarantee the other party freedom from coercion or intimidation of any kind.' H.R.Rep.No. 2850, 84th Cong., 2nd Sess. 1956, 3 U.S.Cong. & Admin.News, pp. 4596, 4603 (1956). See also 102 Congressional Record, 14,070 (1956).
 
 
 13
 The legislation is an attempt to equalize, at least to some extent, the economic advantages which automobile manufacturers have over their dealers. Woodard v. General Motors Corporation, 298 F.2d 121 (5th Cir. 1962), cert. denied, 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288; reh. denied, 370 U.S. 965, 82 S.Ct. 1584, 8 L.Ed.2d 834; Hoffman Motors Corporation v. Alfa Romeo S. p. A., 244 F.Supp. 70 (S.D.N.Y.1965); Barney Motor Sales v. Cal Sales, Inc., 178 F.Supp. 172 (S.D.Cal.1959). It creates a new cause of action, other than for breach of contract, which did not theretofore exist, in cases where a manufacturer is guilty of coercion and intimidation in its dealings with its franchise holders, regardless of whether the franchise is terminated. American Motors Sales Corporation v. Semke, supra; Globe Motors, Inc. v. Studebaker-Packard Corporation, 328 F.2d 645 (3d Cir. 1964); Zarbock v. Chrysler Corporation, 235 F.Supp. 130 (D.Colo.1964).
 
 
 14
 The acts complained of in the aforesaid subsections (a), (b), (c) and (e) of paragraph 6 do not relate to the termination of the franchise but to alleged coercion and intimidation through bad faith conduct of Chrysler. If the alleged acts are actionable at all, they are made so by the statute, and the cause of action accrued when they were committed. The statutory remedy was available, even though there was no termination of the franchises. It is conceded that the acts, except for 6(d), occurred more than three years prior to the commencement of this action. Consequently, the statute of limitations barred a recovery for damages growing out of them. 54 C.J.S. Limitation of Actions 109 (1948). See generally Walker v. Ford Motor Company, 241 F.Supp. 526 (E.D.Tenn.1965).
 
 
 15
 We find no merit in appellants' contention that a common law cause of action was alleged for breach of contract regardless of 'The Automobile Dealers' Day in Court Act.' The complaint alleges that the action was brought under the act and no other contention was made in the trial court. We have often said that new theories and issues not presented to the trial court, in the absence of extraordinary circumstances, which are not present here, will not be considered on appeal. Gomes v. Williams, 420 F.2d 1364 (10th Cir. 1970); Eureka-Carlisle Company v. Rottman, 398 F.2d 1015 (10th Cir. 1968); Hidden Splendor Mining Co. v. General Ins. Co. of America, 370 F.2d 515 (10th Cir. 1966).
 
 
 16
 The only remaining issue of substance is whether the record discloses that there is a genuine issue of material fact relating to the allegation that the franchise was terminated as a result of Chrysler's conduct in violation of the Act. The allegation of the appellants and their deposition testimony reflect the contention to be that they were falsely led to believe that if the existing franchises were voluntarily terminated, a new franchise would be issued to other parties and that their obligations on the leased premises would be assumed by the holders of the new franchise.
 
 
 17
 The provisions of Rule 56(c), Federal Rules of Civil Procedure, provide that a motion for summary judgment shall be granted only when the 'pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Under this rule, bona fide factual disputes may not be disposed of through the use of affidavits, and the rule cannot be used as a substitute for a trial of the case. Bushman Construction Company v. Conner, 307 F.2d 888 (10th Cir. 1962). See also McCullough Tool Company v. Well Surveys, Inc., 395 F.2d 230 (10th Cir. 1968), cert. denied, 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261; Bushman Construction Co. v. Air Force Academy Housing, Inc., 327 F.2d 481 (10th Cir. 1964).
 
 
 18
 The undisputed facts disclosed by the record are that throughout most of the period that the dealership operated it was in financial difficulty, which became acute during the summer of 1965. It was unable to satisfy its creditors, particularly the owner of the garage property which was leased to the dealers for the purpose of carrying on their business.[3] Chrysler had determined that the franchises should be terminated. No contention is made that appellants' franchises were not subject to termination. On September 28 and 29, 1965, various meetings were held in Alamogordo which were attended by interested parties, including the lessors of the premises and applicants for new franchises. As a result of the meetings, the partnership of Hanley and Loftin, owner of the franchises, voluntarily surrendered the same and consented to the issuance of new franchises to third parties. On September 30, 1965, the partners also acknowledged the default in the payment of rentals and waived in writing statutory notice of the landlord's lien claim on lessees' personal property and any further notice relating to the time and place of sale of the property to satisfy the lien. The purpose of the waiver was to permit an immediate sale of the property upon which the lien had attached. The partners executed a sublease of the premises to the new franchise owners for one year with an option to renew for one additional year. The new franchises were then issued for one year with a provision that a new location for the dealerships would be obtained. It is quite obvious that all of these acts were coordinated by the parties precipitating the activation of the new franchises.
 
 
 19
 Hanley now argues that he did not know that the operation of the new franchises would be limited to one year at the leased premises, and that had he known that the new franchise holders would not use the leased premises throughout the full term of the lease which expired in 1969, the voluntary termination of the existing franchises and the waivers of notice of sale of property under the landlord's lien might not have been executed. This claim does not square with what was actually done when the partnership business was closed out.
 
 
 20
 In construing 'The Automobile Dealers' Day in Court Act,' we said, in American Motors Sales Corporation v. Semke, supra, 384 F.2d at 195, that it is reasonable 'to interpret the Act as covering an action based on a wrongful termination of a franchise where the dealer was forced to terminate because of coercive and intimidative acts of the manufacturer.' That is, the Act applies even though the termination appeared to be voluntary on the part of the franchise holder if it was in fact coerced by the manufacturer. The lack of 'good faith' as used in the Act must be related in terms of coercion and intimidation on the part of the manufacturer. Kotula v. Ford Motor Company, 338 F.2d 732 (8th Cir. 1964), cert. denied, 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273, and cases cited therein. See also 7 A.L.R.3d 1173, 1182. The Act specifically eliminates as a violation from its provisions the 'recommendation, endorsement, exposition, persuasion, urging or argument' on the part of the manufacturer. The term, 'good faith,' as used in the statute requires the manufacturer to act in a fair and equitable manner and guarantees to the dealer freedom from coercion, intimidation or threats for the purpose of obtaining a franchise termination. See Milos v. Ford Motor Company, 317 F.2d 712 (3d Cir. 1963), cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 125. A cause of action exists in favor of the dealer only when the unfair and inequitable conduct of the manufacturer amounts to coercion or intimidation. Woodard v. General Motors Corporation, supra. Careful consideration of the entire record in this case leaves us without doubt that there was no lack of good faith dealings on the part of Chrysler, and that all the acts complained of in the complaint were free from coercion and intimidation within the meaning of the Act. We have considered other assignments of error and find them to be without merit.
 
 
 21
 Affirmed.
 
 
 
 *
 Judge Hickey heard arguments in this case and before his death on September 22, 1970 he agreed to an affirmance, but he did not participate in this opinion
 
 
 [1]
 This act is commonly referred to as 'The Automobile Dealers' Day in Court Act.'
 
 
 [2]
 Appellant Hanley alleged that he was the assignee of successors in title to the original partnership
 
 
 [3]
 In September of 1965 there was $2,100 unpaid rental and the lessors had instituted proceedings to foreclose a landlord's lien on the lessees' personal property located on the leased premises