FRAY CHEVROLET SALES, INC., a Michigan Corporation, and Donald E. Fray, Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION, et al., Defendants-Appellees.

No. 75–1527.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1975.

Decided June 11, 1976.

Rene J. Ortlieb, Guy H. Hill, Flint, Mich., for plaintiffs-appellants.

William W. Wumkes, Flint, Mich., for GM.

Allison K. Thomas, Lansing, Mich., for Andrews.

Before PHILLIPS, Chief Judge, and PECK and MILLER,* Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiffs-appellants, formerly the corporate Chevrolet franchisee at Mason, Michigan, and the franchisee's sole shareholder, claimed in their district court complaint that defendant-appellee General Motors' refusal to approve the transfer of the franchise to one Joslin violated the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225.[1] They also claimed GM conspired with defendants-appellees Andrews Chevrolet Sales, Inc., and Andrews to prevent the transfer to Joslin, thereby violating the Sherman Antitrust Act, 15 U.S.C. § 1.

Appellants charged that GM refused to approve the transfer to Joslin, not because he was unqualified,[2] but because GM had "promised" the franchise to Andrews, purportedly for GM's intracorporate reasons.[3] By GM's refusal to approve the transfer to Joslin, appellants claim that they lost the benefits of a favorable lease and of a sale of their dealership properties (*to wit,* accessories, gas, parts, tires, shop equipment, fixtures) to Joslin for $137,000, the transactions being "subjected to [Joslin's] approval" by GM. Joslin and appellants failing to consummate the sale because the dealership properties were substantially less valuable to one lacking a GM franchise, appellants thereafter sold their dealership properties for $82,000 to Andrews, the "approved" transferee.

The district court, after some discovery procedures, granted appellee's motion for summary judgment, reasoning that there was no day-in-court claim because, rather than being terminated, Fray Chevrolet voluntarily terminated its franchise and because Fray Chevrolet could have sold its dealership properties anyway to Joslin, and that there was no antitrust claim because, *inter alia,* there was no proof of public injury, the claimed conspiracy not "reasonably calculated to prejudice the public interests by unreasonably suppressing the free flow of trade or commerce . . . ." We affirm.

The day-in-court statute imposes upon GM a duty "to act in good faith in performing or complying with any of the terms or provisions of the franchise, *or* in terminating, canceling, or not renewing the franchise . . . ." (emphasis supplied) 15 U.S.C. § 1222. Even if the district court was correct in finding no statutory termination, its view being that those terminations must be manufacturer-initiated, compare *Salco Corp. v. General Motors Corp.,* 517 F.2d 567, 571 (10th Cir. 1975), and *Pinney & Topliff v. Chrysler Corp.,* 176 F.Supp. 801 (S.D.Calif.1959), with *Hanley v. Chrysler Motors Corp.,* 433 F.2d 708 (10th Cir. 1970), and *American Motors Sales Co. v. Semke,* 384 F.2d 192, 195 (10th Cir. 1967), the statutory good faith duty still applies because, in approving or refusing to approve the transfer, GM "perform[s] . . . with [a] term . . . or provision . . . of the franchise," see *Hanley, supra, Tom Sul-*

---

* Honorable William E. Miller did not participate in this decision prior to his death on April 12, 1976.

1. See Annot., Validity and Construction of Statute Regulating Dealings Between Automobile Manufacturers, Distributors, and Dealers, 7 A.L.R.3d 1173 (1966); Brown, A Bill of Rights for Auto Dealers, 12 B.C.Ind. & Com.L.Rev. 757, 791–92 (1971); Comment, Limiting the Franchisor's Power to Withhold Consent to a Transfer by the Franchisee, 47 Ind.L.J. 559, 568 n. 47 (1972); Comment, The Automobile Dealer Franchise Act of 1956—An Evaluation, 48 Cornell L.Rev. 711 (1963); Comment, The Judicial Treatment of the Automobile Dealer Franchise Act, 62 Mich.L.Rev. 310 (1963).

2. Joslin deposed that GM officials never told him the transfer was refused because of lack of qualifications and that GM, in fact, offered to permit him to "buy" one of three other dealerships, none of which he purchased (Joslin Deposition at 20–21).

3. Joslin deposed that GM officials told him Andrews was promised the next Lansing area franchise for sale in order to induce Andrews' father-in-law to transfer another franchise (Joslin Deposition 19). Andrews, however, categorically denied that he "did not wish [his] father-in-law to sell the [franchise] unless [Andrews] could acquire a dealership" (Andrews Deposition 16).

*livan Porsche Audi Co. v. SCU Industries, Inc.,* 342 F.Supp. 738, 741 (E.D.Mich.1972), *to wit,* Section 25 of the Additional Provisions applicable to Chevrolet Dealer Selling Agreement, which provides:

"Dealer shall not transfer or assign nor attempt to transfer or assign this Agreement or any right or obligation hereunder without the prior written consent of Chevrolet executed by the General Sales Manager or an Assistant General Sales Manager of Chevrolet."

Thus, the statutory duty of good faith applies to GM's refusal to approve or approval of the transfer. But dismissal was proper because there was "no genuine issue . . . [of] material fact" concerning the lack of statutory good faith. Fed.R.Civ.P. 56(c). Good faith is restrictively defined in 15 U.S.C. § 1221(e) as meaning

"the duty of each party to any franchise . . . to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party . . . ."

█ In the absence of coercion, intimidation, or threats thereof, there can be no recovery through the day-in-court statute, see, e. g., *Salco, supra,* 517 F.2d at 573; *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608, 610 (7th Cir. 1972); *Kotula v. Ford Motor Co.,* 338 F.2d 732, 734 (8th Cir. 1964), *cert. denied,* 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273 (1965); *Milos v. Ford Motor Co.,* 317 F.2d 712, 715–16 (3rd Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 125 (1963); *Woodard v. General Motors Corp.,* 298 F.2d 121 (5th Cir.), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962); *Kaiser v. General Motors Corp.,* 396 F.Supp. 33 (E.D.Pa.1975); *Cecil Corley Motor Co. v. General Motors Corp.,* 380 F.Supp. 819, 843–48 (M.D.Tenn. 1974), even if the manufacturer otherwise acted "in 'bad faith' as that term is normally used." *Overseas Motors, Inc. v. Import Motors Ltd.,* 519 F.2d 119, 125 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). Accord, *Daigle-McInnis*

*v. American Motors Sales Corp.,* 1974–2 CCH Trade Cas. ¶ 75,195 (M.D.La.1974); *Berry Bros. Buick, Inc. v. General Motors Corp.,* 257 F.Supp. 542, 546 (E.D.Pa.1966), *aff'd,* 377 F.2d 552 (3rd Cir. 1967).

"[T]he act of dealer designation in and of itself cannot be treated as a coercive act, even though Chevrolet's appointment of McClintock made it difficult for Frank Chevrolet to sell its assets to another person or to secure its desired price from McClintock. . . . . "

*Frank Chevrolet v. General Motors Corp.,* 304 F.Supp. 307, 316 (N.D.Ohio 1968), *aff'd,* 419 F.2d 1054 (6th Cir. 1969). See *Pierce Ford Sales, Inc. v. Ford Motor Co.,* 299 F.2d 425, 430 (2d Cir.), *cert. denied,* 371 U.S. 829, 83 S.Ct. 24, 9 L.Ed.2d 66 (1962); but see *Semke, supra,* 384 F.2d at 198.

█ Coercion or intimidation must include "a wrongful demand which will result in sanctions if not complied with." *Ship & Shore Motors, Inc. v. British Leyland Motors, Inc.,* 74–1 CCH Trade Cas. ¶ 75,102 (D.N.J.1974). See, e. g., *Randy's Studebaker Sales, Inc. v. Nissan Motor Co.,* 533 F.2d 510 (10th Cir. 1976) (reduce price competition and make certain capital expenditures or risk curtailed supply of automobiles), *David R. McGeorge Co. v. Leyland Motor Sales, Inc.,* 504 F.2d 52 (4th Cir.), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1974) (order certain unwanted models or risk being refused other models), *Semke, supra,* 384 F.2d at 196–97 (order certain unwanted models or risk being refused other models), *Don Richards Lincoln Mercury Jeep, Inc. v. American Motors Corp.,* 1976 CCH Trade Cas. ¶ 60,796 (D.Utah 1976) (relocate and carry "full line" or be terminated), *De Filippo v. Ford Motor Co.,* 378 F.Supp. 456 (E.D.Pa.1974), *rev'd on other grounds,* 516 F.2d 1313 (3rd Cir. 1975) (sign general waiver or be terminated). But appellants fail to claim that GM warned them to transfer the franchise or risk termination; there was no "either-or" attempt at coercion or intimidation. That appellants "mere[ly] . . . felt [themselves] coerced is not sufficient." *Ship & Shore, supra,* citing *General Motors Corp. v. Mac*

*Company,* 247 F.Supp. 723, 726 (D.Colo. 1965).

█ Likewise, we sustain the district court's dismissal of the antitrust claim because "[t]he substitution of one distributor [Andrews] for another [Fray] . . . does not eliminate or materially diminish the existing competition . . . and, in our opinion, is not an unreasonable restraint of trade." *Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir.), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963). Accord, *Dreibus v. Wilson,* 529 F.2d 170, 172–74 (9th Cir. 1975); *Burdett Sound, Inc. v. Altec Corp.,* 515 F.2d 1245 (5th Cir. 1975); *Daigle-McInnis, supra,* 1974–2 CCH Trade Cas. ¶ 75,195; *B & B Oil & Chemical Co. v. Franklin Oil Corp.,* 293 F.Supp. 1313, 1317 (E.D.Mich.1968) (granting summary judgment against claim that manufacturer's eliminating of "middle man" distributor, and substituting itself therefor, violated antitrust laws because "[t]he opinions have been unanimous . . . in holding that a manufacturer's changes in his distribution system, vertical realignments, or transfers, do not offend anti-trust laws").

Of course, in sustaining the dismissal of the day-in-court and antitrust claims, we imply no view as to the merits of appellants' state court claims against appellees. Even if appellants' state court contract claim centered around GM's purported bad faith in refusing to approve the transfer, our holding that there was no "genuine issue" of statutory "bad faith" reflects no view as to whether there was "bad faith" sufficient to underlie a state law contract claim. *Overseas Motors, supra,* 519 F.2d at 125–26; *Hanley, supra.* See *Randolph v. New England Mut. Life Ins. Co.,* 526 F.2d 1383 (6th Cir. 1975).

Affirmed.