460 F.Supp. 1166 (1978)
FRANCIS CHEVROLET COMPANY, Plaintiff,
v.
GENERAL MOTORS CORPORATION, Defendant.
No. 77-706C(3).
United States District Court, E. D. Missouri, E. D.
November 22, 1978.
*1167 Edward P. McSweeney, Padberg, McSweeney & Slater, St. Louis, Mo., for plaintiff.
James E. McDaniel, Barnard & Baer, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon defendant's motion for summary judgment. Plaintiff brought this suit alleging in Count I of the complaint that defendant failed to act in good faith toward plaintiff in plaintiff's efforts to sell out and terminate its franchise in violation of 15 U.S.C. § 1221 et seq. Specifically, plaintiff alleges that defendant directed plaintiff to negotiate the sale of its assets to Carl B. Merollis and Merollis Chevrolet, Inc., because of a previous promise by defendant to Merollis and Merollis Chevrolet, Inc., that they would receive the first available franchise in St. Louis County; that defendant refused to permit plaintiff to negotiate and contract for the sale of plaintiff's assets with others on and after September 1, 1974, until December 1, 1974; and that defendant at all times knew that Merollis Chevrolet, Inc., and Carl B. Merollis were financially unable to purchase plaintiff's franchise assets until Merollis and Merollis Chevrolet, Inc., had sold their assets and further that defendant refused to approve agreements covering the sale of assets of the Merollis franchise. In Count II of the complaint, plaintiff seeks damages for alleged tortious interference with contract rights.
From the record, the following facts appear: plaintiff and defendant's Chevrolet Motor Division entered into a Chevrolet Dealer Selling Agreement for a term effective September 17, 1973, to October 31, 1975. On July 12, 1974, plaintiff, through Lester P. Francis, Sr., notified defendant of plaintiff's desire to terminate its car dealership. Defendant was in no way involved in the decision to terminate. Accordingly, plaintiff sought to sell its assets; plaintiff recognized that the franchise was not its to sell. At a meeting on July 12, 1974, with defendant's zone manager, Charles Brown, Mr. Brown suggested that plaintiff attempt to negotiate with Carl Merollis, since defendant had promised to give Merollis the first available suburban dealership. Mr. Brown also suggested meeting with a George Pappas and indicated that a few other individuals might be interested.
On July 19, 1974, plaintiff entered into an agreement with Merollis. Defendant was not present at the negotiations. Plaintiff assumed that Merollis would have to sell the assets of his dealership in order to purchase plaintiff's assets but did not know that it was absolutely necessary for Merollis to do so. Plaintiff and Merollis signed a Buy-Sell Agreement which had, as one requirement, an escrow provision requiring Merollis to deposit $25,000.00 in a specified bank account. Although there was a separate escrow agreement which had a time limit of September 1, 1974, the Buy-Sell Agreement did not contain any closing date. In fact, plaintiff continued to negotiate with Merollis about the sale until January, 1975.
*1168 Following the signing of the Buy-Sell Agreement, Merollis attempted to dispose of his assets. Defendant referred a number of interested parties to Merollis but no sale was ever consummated. One candidate was unable to obtain the requisite financing although defendant had approved the candidate as a franchisee. Another candidate was also unable to obtain the necessary financing. Although plaintiff alleges that defendant failed to approve agreements submitted to it concerning the sale of Merollis' assets, Lester P. Francis, Jr., was unable, at deposition, to specify any agreements that defendant failed to approve. It appears from the record that the failure of Merollis to sell his assets were the result of Merollis' sale price and the prospective purchasers' inability to obtain the necessary financing.
On October 16, 1974, Lester Francis Sr. and Jr. met with J. J. Butler, Assistant Area Manager. A memo to the file prepared by Mr. Butler states the following:
On Wednesday October 16 at the request of Messrs. Les Francis Sr. & Jr., a contact was made by the writer at their dealership. Mr. Les Francis Sr. advised that he was going to proceed, through his attorney, to advise Mr. Merollis that he did not consider him as the purchaser of the assets of the Francis Chevrolet operation, due to the inability of Mr. Merollis to sell his assets and subsequently purchase the assets of Francis Chevrolet. I advised Messrs. Francis that it was their prerogative to proceed in any way that they saw fit in this regard and at this point, Mr. Francis asked if we would consider Mr. George Pappas as a prospective purchaser of the assets of Francis Chevrolet. I advised Messrs. Francis that Chevrolet Motor Division would consider any qualified individual whom they presented as a prospective purchaser, however, it would be incumbent on Chevrolet and Messrs. Francis to advise, in this case, Mr. Pappas of the existence of the Buy-Sell Agreement with Mr. Merollis which does not reflect an expiration date for the time allotted to Mr. Merollis to purchase the assets of Francis Chevrolet. Messrs. Francis agreed that this was all true.
Again, on November 4, 1974, a memo to the file written by Mr. Butler concerning a meeting held with Francis, Sr. and Francis, Jr. reflects the following:
The writer advised Mr. Francis that Chevrolet Motor Division would welcome for consideration any qualified candidate for the purchase of the assets of Francis Chevrolet Co.  however, all concerned must realize that the existing buy-sell agreement between Francis Chevrolet and Carl Merollis still existed because said agreement was undated at the time of its execution and further that it would be necessary to clear this buy-sell with Mr. Merollis in order to give a new candidate a clean slate in executing a new buy-sell agreement and the possible acceptance of a Chevrolet franchise.
Mr. Francis agreed that this was true and stated that he would immediately pursue the matter of cancelling the existing buy-sell agreement with Mr. Merollis through his (Mr. Francis') attorney. At this point the meeting adjourned.
On November 27, 1974, defendant informed plaintiff that
. . . if Mr. Les Francis would advise Chevrolet in writing that he no longer considered Mr. Carl B. Merollis a candidate for the purchase of the assets of Francis Chevrolet and further that if Mr. Francis stated in this letter that he would assume 100% responsibility for any legal action on the part of Mr. Merollis, Chevrolet would then accept for consideration a new candidate, of course, subject to approval based on standard Chevrolet Motor Division procedures.
The record herein further reflects that on March 18, 1974, defendant advised Merollis Chevrolet, Inc. that a report had indicated several financial statement errors, which had the effect of overstating owned net working capital by $218,589.00. These errors did not affect the net profit or net worth; the errors simply resulted in an overstatement of owned net working capital. Defendant has filed the affidavit of *1169 Sherman A. Chamberlain, Manager of defendant's Accounting Analysis Department. This affidavit states that a review of the Application, Personal Financial Information and Source of Funds Statement submitted by Merollis did not reveal any information which would lead defendant to conclude that Merollis would not be able to raise the funds necessary to purchase the assets of plaintiff.
The Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq. creates a cause of action
(1) when the manufacturer fails to act in good faith in terminating, cancelling or failing to renew the written franchise agreement with the dealer, or (2) when the manufacturer fails to act in good faith in complying with the terms of that written franchise agreement. Cecil Corley Motor Company, Inc. v. General Motors Corporation, 380 F.Supp. 819, 843 (M.D.Tenn.1974).
Central to the cause of action is the element of good faith, defined in the statute as
. . . the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith. 15 U.S.C. § 1221(e).
Thus, the presence or absence of good faith is to be determined in accordance with the statutory definition thereof "in a context of actual or threatened coercion or intimidation." Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp., 461 F.2d 608, 610 (7th Cir. 1972). See also Fray Chevrolet Sales, Inc. v. General Motors Corp., 536 F.2d 683 (6th Cir. 1976); Garvin v. American Motor Sales Corporation, 318 F.2d 518 (3d Cir. 1963); Pierce Ford Sales, Inc. v. Ford Motor Company, 299 F.2d 425 (2d Cir. 1962); Cecil Corley Motor Company, supra; Frank Chevrolet Company v. General Motors Corporation, 304 F.Supp. 307 (N.D.Ohio 1968); Berry Brothers Buick, Inc. v. General Motors Corp., 257 F.Supp. 542 (E.D.Pa.1966).
In Frank Chevrolet Company v. General Motors Corporation, supra, the defendant had designated the individual to receive the next area franchise. Thus, the plaintiff's attempts to sell its assets were severely limited. The court held that the Dealers' Day in Court Act was not violated:
Undoubtedly, the price of $25,000 purportedly offered Finesilver by McClintock was affected by Chevrolet's designation of McClintock to be the new holder of the Chardon point franchise. Assuming the non-renewal of Frank Chevrolet's franchise is non-coercive, as previously found, Chevrolet had the right to appoint a new Chardon dealer. Accordingly, the act of dealer designation in and of itself cannot be treated as a coercive act, even though Chevrolet's appointment of McClintock made it difficult for Frank Chevrolet to sell its assets to another person or to secure its desired price from McClintock. Id. at 316.
Thus, the Court concludes that defendant's promise to Merollis that he would receive the next available suburban franchise does not constitute a lack of good faith as required by the statute. Moreover, the record fails to support plaintiff's contention that defendant directed plaintiff to negotiate with Merollis; defendant simply referred plaintiff to Merollis, as well as others, in an effort to aid plaintiff in the sale of its assets.
In Garvin v. American Motor Sales Corporation, supra, the court held that the act was not violated where the defendant failed to assist the plaintiff in the establishment of credit. The Court held that "the statute does not require the manufacturer to aid in financing the operations of its dealers." Id. at 520-21. Cf., Pierce Ford Sales, Inc. v. Ford Motor Company, supra (holding that the Act was not violated where the manufacturer refused to give a franchise to a prospective purchaser of the plaintiff's assets where the purchaser lacked sufficient financial resources). Accordingly, *1170 the Court concludes that defendant did not violate the Act in connection with the attempted sale of assets by Merollis. The record establishes that Merollis was unable to sell his assets because of a lack of financing on the part of the prospective purchasers. Defendant has no obligation to provide such financing nor any other obligation to make the Merollis sale easier to consummate. Accordingly, no liability can attach for failure to provide the same.
The allegation that defendant knew that Merollis was financially unable to purchase plaintiff's franchise is totally unsupported by the record.
Plaintiff alleges that defendant refused to permit plaintiff to negotiate with purchasers other than Merollis during a specified period of time, in violation of the Act. The record, however, belies that contention. The undisputed facts establish that defendant at first informed plaintiff that prospective purchasers must be advised of the undated Buy-Sell Agreement between plaintiff and Merollis and later that plaintiff would have to assume responsibility for any legal action that might result were plaintiff to sell its assets to a purchaser other than Merollis. The Court fails to discern the coercion or intimidation, or threats thereof, in such action. Admittedly, plaintiff had entered into an agreement to sell its assets to Merollis which agreement contained no time limitation. In fact, litigation between plaintiff and Merollis resulted from that agreement. Defendant certainly had an interest in protecting the legal liabilities of any future franchise. Cf., Pierce Ford Sales, Inc., supra. Defendant indicated its willingness to consider other purchasers; defendant simply desired that such purchasers be informed of the existing Buy-Sell Agreement. The Court therefore concludes that defendant did not violate the Dealers' Day in Court Act, and that plaintiff has totally failed to support its allegation that defendant refused to permit plaintiff to negotiate with purchasers other than Merollis.
Under Missouri law, plaintiff must establish the following elements in order to prove its claim of tortious interference:
(1) A contract or a valid business relationship or expectancy (not necessarily a contract);
(2) Defendant's knowledge of the contract or relationship;
(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;
(4) The absence of justification; and
(5) Damages resulting from defendant's conduct.

Salomon v. Crown Life Insurance Company, 536 F.2d 1233, 1238 (8th Cir. 1976).
In support of its claim of tortious interference, plaintiff alleges that defendant directed plaintiff to negotiate the sale of its assets with Merollis because of the promise by defendant that Merollis would receive the next available franchise, that defendant knew Merollis was financially unable to purchase plaintiff's assets but failed to so inform plaintiff; that defendant failed to approve agreements concerning the sale of Merollis' assets; and that defendant refused to permit plaintiff to negotiate for the sale of its assets with individuals other than Merollis.
 The facts adduced herein simply do not support plaintiff's contentions. Plaintiff was not directed to negotiate only with Merollis, nor was plaintiff precluded from dealing with others. The record establishes that defendant was unaware of any financial impediment to Merollis' purchase of plaintiff's assets. Defendant did not reject any agreements for the sale of Merollis' assets; none of the prospective purchasers was able to obtain the requisite financing. Defendant can not be liable herein for such failings. Cf., Frank Coulson Inc.-Buick v. General Motors Corp., 488 F.2d 202 (5th Cir. 1974) (applying Florida law). Lastly, the Court concludes that a manufacturer's promise to grant the next available franchise to a specified individual can not be the basis of a claim of tortious interference; the franchise was not plaintiff's to sell. Cf., Western Robidoux Printing & Lithographing Co., Inc. v. Missouri *1171 State Highway Commission, 498 S.W.2d 745 (Mo.1973).
Accordingly, defendant's motion for summary judgment will be granted.