FRANCIS CHEVROLET COMPANY,
Appellant,

v.

GENERAL MOTORS CORPORATION,
Appellee.

No. 79–1068.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1979.

Decided July 18, 1979.

Edward P. McSweeney of Padberg, McSweeney, Slater, Merz & Reid, St. Louis, Mo., for appellant.

James E. McDaniel of Barnard & Baer, St. Louis, Mo., for appellee; Doris J. Banta, St. Louis, Mo., and Otis M. Smith and Charles J. Pinto, Detroit, Mich., on brief.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from the grant of a summary judgment in favor of General Motors, (GM), rendered in a suit brought by one of its franchisers under the Automobile Dealers Day in Court Act, 15 U.S.C. §§ 1221–1225 (Dealers Act). The plaintiff-franchiser, Francis Chevrolet Co., (Francis), filed a complaint alleging GM was guilty of bad faith in dealing with Francis and alleged as well a second count for tortious interference in the attempted sale of its dealership assets. Based on the record submitted, the trial court, the Honorable John F. Nangle, found no dispute of fact and held that the defendant was entitled to summary judgment on both counts. We affirm.

Although different legal principles control, the two claims arise from the same operative facts. In July 1974 Francis Chevrolet notified GM's Chevrolet Motors Division of its desire to sell its dealership. At that time Francis Chevrolet had a written franchise agreement effective from September 17, 1973, until October 31, 1975. Under the agreement GM had sole authority to approve plaintiff's successor franchiser; however, plaintiff was always free to sell its assets independently of the franchise. Francis Chevrolet approached GM seeking possible purchasers of the dealership who would be acceptable as franchisers.

General Motors had promised Carl Merollis, who at that time owned another Chevrolet dealership in St. Louis, the first choice for a suburban dealership. After brief negotiations with Merollis, plaintiff on July 19, 1974, entered into a buy-sell agreement with Merollis. The agreement had no closing date, although it would appear that a separate escrow agreement had a termination date of September 1, 1974. Merollis' financial condition was such that it was necessary for him to sell his existing dealership before he could close the transaction with Francis. He was unsuccessful in doing so. In October of 1974 Francis asked GM's permission to seek other potential buyers as franchise candidates. GM indicated this would be permissible as long as Merollis was notified and withdrew from the buy-sell agreement. On November 27 GM acquiesced in considering a new candidate as long as Francis would take full responsibility for any legal action brought by Merollis. Subsequently GM's legal department indicated, without mentioning need to exonerate GM, that Francis could deal with anyone and GM would consider them for a franchise.

Francis asserts that GM violated the Dealers Act and was guilty of bad faith in: (1) referring Francis to Merollis knowing that Merollis did not have the financial resources to buy the Francis assets unless he sold the existing Merollis dealership; (2) refusing to approve a potential purchaser of the Merollis assets; and (3) refusing to consider potential purchasers of the Francis assets other than Merollis until the end of November.

The Dealers Act[1] creates a claim for relief when: (1) a manufacturer acts in bad faith in terminating, cancelling or failing to renew a written franchise agreement with a dealer, or (2) he acts in bad faith in complying with the written terms of the agreement. Plaintiff urges that the Act requires GM deal equitably and fairly with its franchisers. It is undisputed that "good faith" under the Dealers Act requires the plaintiff to prove lack of good faith in terms of coercion, intimidation or threats. Cf. *Milos v. Ford Motor Co.*, 317 F.2d 712 (3d Cir. 1963), *cert. denied* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 125 (1963); *Pierce Ford Sales, Inc. v. Ford Motor Co.*, 299 F.2d 425 (2d Cir. 1962), *cert. denied* 371 U.S. 829, 83 S.Ct. 24, 9 L.Ed.2d 66 (1962); *Globe Motors, Inc. v. Studebaker-Packard Corp.*, 328 F.2d 645 (3d Cir. 1964).

■ As the trial court points out, there is no evidence on this record, inferentially or otherwise, which supports any showing of threats, coercion or intimidation relating to the negotiations with Francis. The fact that GM did not approve a particular purchaser as a franchiser does not evidence coercive bad faith. *Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d 683, 685 (6th Cir. 1976); *Frank Chevrolet Co. v. General Motors Corp.*, 304 F.Supp. 307, 316 (N.D.Ohio 1968), *aff'd*, 419 F.2d 1054 (6th Cir. 1969). At best coercion or intimidation implies a *wrongful* demand. Plaintiff urges that it raised a fact question concerning GM's "good faith" in recommending Merollis, since GM allegedly knew that Merollis was financially unable to go through with the deal. Aside from our concern that Francis was selling its own assets and had some reasonable responsibility to investigate the financial solvency of the party with whom it was contracting (barring a good faith reliance on a fraudulent misrepresentation by GM), we fail to see under the evidence submitted any coercive act in GM's conduct. The act of dealer designation is hardly coercive conduct within the meaning of the Dealers Act. Nor is the fact that Francis felt compelled to deal with Merollis sufficient. See *Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d at 685. GM did not enter into the negotiations with Merollis. There is no indication that Francis asserted any doubt as to Merollis' ability to complete the purchase.

■ The Francis complaint centers on GM's knowledge that Merollis' financial statement allegedly overstated its owned net working capital. The difficulty arose because, unknown to Francis, this sum included approximately $200,000 from a personal note by Merollis to the business and a receivable from Merollis Chevrolet of Kansas City, Missouri. In discussing this evidence the district court observed:

These errors did not affect the net profit or net worth; the errors simply resulted in an overstatement of owned net working capital. Defendant has filed the affidavit of Sherman A. Chamberlain, Manager of Defendant's Accounting Analysis Department. This affidavit states that a review of the Application, Personal Financial Information and Source of Funds Statement submitted by Merollis did not

---

1. Section 2 of the Dealers Act, 15 U.S.C. § 1222 provides:

An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Pro-*

*vided*, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

Good faith is defined in § 1221(e) as follows:

The term "good faith" shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

reveal any information which would lead defendant to conclude that Merollis would not be able to raise the funds necessary to purchase the assets of plaintiff.

*Francis Chevrolet Co. v. General Motors Corp.*, 460 F.Supp. 1166, 1168 (E.D.Mo. 1978).

Under the circumstances we fail to see that GM's conduct amounts to coercion, intimidation or threatening conduct.

■ Francis claims that the decision by Motors Holding Division of GM not to finance the purchase of Merollis' assets by a potential buyer constituted bad faith which precluded Merollis from purchasing the Francis assets. This assertion finds no support in the record.[2] Furthermore, it should be noted that GM had no obligation to provide the financing needed. *Cf. Garvin v. American Motors Sales Corp.*, 318 F.2d 518, 520–21 (3d Cir. 1963) ("[T]he statute does not require the manufacturer to aid in financing the operations of its dealers."); *Pierce Ford Sales, Inc. v. Ford Motor Co.*, 299 F.2d 425, 430 (2d Cir. 1962).

■ The last claim under the Dealers Act is that GM refused to consider any other potential purchasers. The trial court succinctly answered this claim when it observed:

> Admittedly, plaintiff had entered into an agreement to sell its assets to Merollis which agreement contained no time limitation. In fact, litigation between plaintiff and Merollis resulted from that agreement. Defendant certainly had an interest in protecting the legal liabilities of any future franchise. *Cf. Pierce Ford Sales, Inc., supra.* Defendant indicated its willingness to consider other purchasers; defendant simply desired that such purchasers be informed of the existing Buy-Sell Agreement.

*Francis Chevrolet Co. v. General Motors Corp.*, 470 F.Supp. at 1170.

**2.** From the record it appears uncontradicted that the reason GM refused to finance the purchase of the Merollis assets was the high price being asked by Merollis.

*See Pierce Ford Sales, Inc. v. Ford Motor Co.*, 299 F.2d at 428, 430.

■ Plaintiff complains of the use of summary judgment to determine lack of good faith. However, as we have observed, under the Dealers Act absence of good faith is given a restrictive meaning. Under the circumstances we find no error in the court's grant of summary judgment under Count I. *See, e.g., Minson Plymouth, Inc. v. Chrysler Motors Corp.*, 554 F.2d 1266 (4th Cir. 1977) (directed verdict); *Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d 683 (6th Cir. 1976) (summary judgment); *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 519 F.2d 119 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975) (directed verdict); *Salco Corp. v. General Motors Corp., Buick Motor Div.*, 517 F.2d 567 (10th Cir. 1975) (summary judgment); *Kotula v. Ford Motor Co.*, 338 F.2d 732 (8th Cir. 1964), *cert. denied*, 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273 (1965) (judgment notwithstanding the verdict). For the foregoing reasons we find summary judgment was warranted in this case on the statutory claim.

■ Under Count II plaintiff has the burden to prove under applicable Missouri law five elements to establish tortious interference with its contractual relations. As we observed in *Salomon v. Crown Life Ins. Co.*, 536 F.2d 1233 (8th Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976), these are:

(1) A contract or valid business relationship or expectancy (not necessarily a contract);

(2) Defendant's knowledge of the contract or relationship;

(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;

(4) The absence of justification; and,

(5) Damages resulting from defendant's conduct.[3]

**3.** Francis contends the "justification" element involves an affirmative defense and therefore is not to be considered on a motion for summary judgment. As this court stated in *Salomon v.*

*Id.* at 1238.

The trial court properly disposed of this contention, observing:

> The facts adduced herein simply do not support plaintiff's contentions. Plaintiff was not directed to negotiate only with Merollis, nor was plaintiff precluded from dealing with others. The record establishes that defendant was unaware of any financial impediment to Merollis' purchase of plaintiff's assets. Defendant did not reject any agreements for the sale of Merollis' assets; none of the prospective purchasers was able to obtain the requisite financing. Defendant can not be liable herein for such failings. . . .
>
> Lastly, the Court concludes that a manufacturer's promise to grant the next available franchise to a specified individual can not be the basis of a claim of tortious interference; the franchise was not plaintiff's to sell.

*Francis Chevrolet Co. v. General Motors Corp.,* 460 F.Supp. at 1170 (citations omitted).

General Motors was not legally obligated to finance the purchase of the Merollis assets nor required to ignore the existence of an outstanding buy-sell agreement. In such a situation, we find the district court's order granting the motion for summary judgment was appropriate. *Cf. Salomon v. Crown Life Ins. Co.,* 536 F.2d at 1244; *Western Robidoux Printing & Lithographing Co., Inc. v. Missouri State Highway Comm'n,* 498 S.W.2d 745, 749 (Mo.1973); *Pillow v. General Am. Life Ins. Co.,* 564 S.W.2d 276, 281–83 (Mo.App.1978).

The judgment of the district court is affirmed.

*Crown Life Ins. Co.,* however, the absence of justification is the technical expression of malice which a plaintiff must prove. 536 F.2d at 1240.