Ida AKINS, Plaintiff,

v.

MEDICAL ENVIRONMENTAL SYSTEMS, INC., et al., Defendants.

No. 78–676C(3).

United States District Court,
E. D. Missouri, E. D.

April 14, 1981.

Kenneth M. Chackes, Michael J. Hoare, St. Louis, Mo., for plaintiff.

Donald L. James, D. Michael Linihan, Dennis C. Donnelly, Wm. F. James, St. Louis, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits after trial to the Court. Plaintiff's complaint alleges, in brief, that her former employer, Medical Environmental Systems, Inc. ("MEDiSERVICE") discriminated against her in firing her because she is black, in violation of 42 U.S.C. § 1981. The complaint alleges that the remaining defendants discriminated against plaintiff in interfering with her employment and in conspiring to do so, in violation of 42 U.S.C. §§ 1981, 1983, and 1985; the complaint also states claims against these defendants for slander, libel, and intentional interference with a contractual relationship. After consideration of the testimony and exhibits introduced at trial, and the parties' stipulations and briefs, the Court hereby makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.

## FINDINGS OF FACT

Plaintiff Ida Akins is a black female citizen of the United States residing in St. Louis, Missouri.

Defendant MEDiSERVICE is a corporation.

Defendant St. Louis University (SLU) is a private university located in the City of St. Louis. Defendant SLU operates St. Louis University Hospital (the Hospital) and employs the security guards assigned to that hospital.

Defendants Toomey and Keene, white males, were employed as Security Officers by defendant SLU at the Hospital on December 29, 1977. Defendants Toomey and Keene, while employed by defendant SLU, were licensed as private watchmen.

On September 15, 1971, defendant MEDiSERVICE and St. Louis University Hospitals entered into an agreement pursuant to which MEDiSERVICE rendered housekeeping services for the Hospital. Said contract was in force and effect on December 29, 1977.

On December 29, 1977 plaintiff was working for MEDiSERVICE as a cleaning technician at the Hospital. Plaintiff had been employed by MEDiSERVICE since some time in 1970. Plaintiff's shift in December, 1977, was from 4:00 p. m. to 9:00 p. m.

Norma Lumpford is a black female and was employed by defendant MEDiSERVICE at the Hospital on December 29, 1977 as a cleaning technician.

Ed Gestring is a white male and was employed by defendant MEDiSERVICE at the Hospital on December 29, 1977 as a cleaning technician. Gestring's shift in December, 1977, was from 6:00 p. m. to 11:00 p. m.

Thomas Beisler is a white male and was on December 30, 1977, Manager of the Housekeeping Department of defendant MEDiSERVICE, in charge of its employees at the Hospital.

Lucius Johnson and Howard Steiner were, on December 30, 1977, supervisory employees of defendant MEDiSERVICE with supervisory authority over cleaning technicians. Johnson and Steiner reported to Beisler.

Sometime during the afternoon or evening of December 29, 1977, Gestring met plaintiff in the Hospital hall and told her that if she wanted some free hamburgers that were going to be thrown away, she should meet him in the Hospital cafeteria at 9:00 p. m. (The cafeteria closed at approximately 8:30 p. m.) Plaintiff asked Norma Lumpford to go with her to the cafeteria. When the two women, plaintiff and Ms. Lumpford, arrived in the cafeteria, Gestring was taking hamburgers from a warmer. He gave plaintiff three hamburgers, which plaintiff put into a shopping bag. Gestring took eight hamburgers for himself and other cleaning people in the operating room. Gestring put the hamburgers in a box, along with some coffee. He left the cafeteria.

Plaintiff, after receiving the hamburgers from Gestring, loaded more food into her shopping sack. She took 10 sandwiches, 10 Twinkies, 15 glazed doughnuts, two more hamburgers, and 10 cartons of ice cream. Plaintiff intended to take the food home. Norma Lumpford put two sweet rolls in her own pockets, but they were not visible.

As plaintiff was putting the ice cream into the bag, defendants, Keene and Toomey entered the cafeteria for a coffee break. Keene and Toomey just chanced to converge on the scene; they had not arranged to meet. They had not seen Gestring.

Toomey approached plaintiff and asked what she was doing and then asked her name, but plaintiff did not respond audibly to either question. He suggested that she put some of the food back. However, plaintiff became angry and abusive and walked quickly out of the cafeteria, leaving the shopping bag on top of the ice cream freezer. Ms. Lumpford left.

Toomey and Keene followed plaintiff as she ran down the corridor into a women's restroom. Toomey took plaintiff's bag with him. He called to plaintiff that she was under arrest. Toomey and Keene asked plaintiff to come out of the restroom, but she did not come out. Toomey and Keene then asked another MEDiSERVICE employee to summon Lucius Johnson.

Johnson arrived and persuaded plaintiff to come out of the bathroom. Plaintiff then gave her name to defendants Toomey and Keene, and Johnson and the plaintiff left to go to the MEDiSERVICE office. Defendant Keene resumed his patrol. Defendant Toomey inventoried the contents of plaintiff's shopping bag in the Security office. He wrote up a Saint Louis University Security Department Report. He also prepared a Hospital Incident Report. He returned the food items to the cafeteria. Toomey's supervisor, Sergeant Hurt, also inspected the contents of plaintiff's bag; he decided that plaintiff would not be arrested.

About five minutes after plaintiff and Johnson went to the MEDiSERVICE office, Johnson called Gestring and told him to come to the office. Gestring went to the office and admitted to Johnson and Howard Steiner, the night manager for MEDiSERVICE, that he had gotten hamburgers that evening and that he had a "past practice" of doing so. He also admitted giving hamburgers to plaintiff.

The next morning, December 30, 1977, when Thomas Beisler, Manager of Housekeeping for defendant MEDiSERVICE arrived at work, he found a note from Howard Steiner. The note said that both Gestring and Akins had been in the cafeteria, apparently to get some free food, and that Security had accused Akins, but not Gestring, of stealing. Beisler called Steiner at home; Steiner advised him to talk to Security. Beisler then contacted Fred Meyer, the Security Chief, who gave Beisler copies of the reports that had been written by defendant Toomey.

Beisler then talked to defendants Toomey and Keene, who confirmed the account of the incident contained in the Security report. Beisler also talked to Lucius Johnson, who described his role in the incident, and who mentioned that Gestring was involved. Beisler discussed the incident with Kristine Gebbie, who was then Assistant Administrator of Hospitals for defendant SLU. Gebbie was the Hospital's representative in its dealings with MEDiSERVICE. Beisler apprised Gebbie of the incident, about which she had learned through copies of the two written reports. He told Gebbie that plaintiff would be fired, but Gebbie did not ask that plaintiff be fired.

After doing all of the foregoing, Beisler decided to terminate the plaintiff. Beisler called the plaintiff into his office, when she reported for work, and informed her she was fired. Beisler testified that plaintiff was fired *only* for stealing.

Beisler talked to Gestring at some point on December 30. Gestring told Beisler that he had given hamburgers to the plaintiff and that he had taken hamburgers himself to his coworkers in the operating room. Plaintiff had also told Beisler that Gestring and Lumpford had been in the cafeteria. However, Gestring was not discharged; he was given a written reprimand by Beisler for being out of his work area. Beisler testified that the reason he did not fire Gestring was the fact that Gestring did not get caught and no security report was written up on him. No action was taken against Norma Lumpford. Beisler also testified that it was not necessary for him to have a written Security Report or Hospital Incident Report in order to terminate an employee for theft.

There was evidence of an "unwritten policy" that perishable food, that would have been discarded, could be had for free in the cafeteria after the cafeteria had closed. Kristine Gebbie testified that there was such a policy, limited to items which would have been discarded before the next serving period and which could be consumed as a snack on the premises. Defendant Toomey also testified that there was such a policy, and said that he would not have attempted to prevent the plaintiff from taking a hamburger. Beisler testified that in response to complaints from a food service management supervisor, that food had been leaving the cafeteria after the cafeteria had closed, Beisler had explained at a monthly meeting of housekeeping employees in the summer of 1977 that employees were not allowed to take food from the cafeteria. Beisler indicated that the result of any stealing would

be automatic discharge. Lucius Johnson or Howard Steiner conducted the same meeting for evening housekeeping employees.

The Court finds that the reasonable inference from the evidence concerning the policy regarding food items leaving the cafeteria is that items such as hamburgers and coffee, which could not be sold the next day, were left available in the cafeteria after the cafeteria had closed so that employees could help themselves. The policy did not extend to removing items which could be served the next day.

During the year prior to December 29, 1977, eighty-five to ninety percent of MEDiSERVICE employees at the Hospital were black. Three of five supervisory personnel of MEDiSERVICE at that time were black.

## CONCLUSIONS OF LAW

The court has jurisdiction over Count I of this action pursuant to 28 U.S.C. § 1343.

The order and allocation of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny, for disparate treatment claims in Title VII cases are applicable to plaintiff's § 1981 claim against defendant MEDiSERVICE. *Hudson v. International Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir.), *cert. denied* —— U.S. ——, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980), and cases cited therein. *McDonnell Douglas Corp., supra*, is applicable to a claim of discriminatory discharge. *See, e. g., Osborne v. Cleland*, 620 F.2d 195 (8th Cir. 1980).

■ The Court finds that the plaintiff established a *prima facie* case of discrimination because she is black, she was discharged, and the reasonable inferences from the fact that she had worked for MEDiSERVICE for some seven years prior to her discharge are that she was competent, and that whomever would have been hired to fill plaintiff's job would have had plaintiff's qualifications. These facts establish a *prima facie* case. *Osborne v. Cleland, supra*, 620 F.2d at 198.

■ The Court further concludes that defendant MEDiSERVICE articulated a legitimate and nondiscriminatory reason for firing plaintiff in that she stole food from the cafeteria. MEDiSERVICE clearly satisfied its "intermediate burden" of "produc[ing] admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981).

■ Plaintiff attempted to show that the articulated reason was a pretext by showing that Gestring was not fired although he admitted to taking hamburgers from the cafeteria. Such evidence, along with evidence of the defendant's general practice and policies concerning employment of blacks, is relevant to the issue of pretext. *Osborne v. Cleland, supra*, 620 F.2d at 198. The Court recognizes in this regard that Beisler's explanation for the difference in treatment, that he did not fire Gestring because Gestring did not get caught, does not in fact shed any nondiscriminatory light on Beisler's action. The evidence does not explain the significance to Beisler's mind of an employee's not "getting caught."

However, Beisler's statement is not evidence of a discriminatory motive, and plaintiff simply has not succeeded in proving, "either directly by persuading the court that a discriminatory reason more likely motivated the employer [or] indirectly by showing that the employer's proferred explanation [i. e., stealing food] is unworthy of credence," *Texas Department of Community Affairs v. Burdine, supra*, 101 S.Ct. at 1095, that she was the object of intentional discrimination. It is obvious that Gestring's violation of the announced MEDiSERVICE policy was much less significant than was plaintiff's. The items taken by Gestring were items that could have been consumed with impunity, at least in the cafeteria. Gestring's violation was that he took the hamburgers out of the cafeteria, and he took them for his coworkers. Plaintiff, on the other hand, took at least some items

that could have been sold at a later date, and she intended to take them home.

The Court finds that plaintiff's behavior was more reprehensible than Gestring's, and although Beisler did not testify that this was the reason for the difference in treatment, the Court finds that it is at least as likely that this difference was responsible for the difference in plaintiff's and Gestring's treatment as it is that racial discrimination was in any manner responsible for the differing treatment. Especially when considered together with the fact that three of five MEDiSERVICE supervisors were black, and 85% to 90% of MEDiSERVICE employees were black, the Court finds that plaintiff simply has not sufficiently carried her ultimate burden of persuasion. The Court, of course, cannot provide a legitimate nondiscriminatory reason for defendant MEDiSERVICE's action. However, MEDiSERVICE introduced evidence of such a reason, and the plaintiff has not persuaded the Court that that reason was not the true one.

As to Counts II, III and IV of the complaint, the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343. Plaintiff's § 1981 claim against defendants Toomey, Keene, and SLU must fail because, assuming without deciding that those defendants had sufficient involvement with plaintiff's employment contract, the Court has found that defendants Toomey and Keene did not see Gestring on December 29, 1977, and the Court has found that their reports of the incident in question were accurate. The Court cannot find that they or defendant SLU acted in any racially discriminatory manner in connection with plaintiff's discharge. As to plaintiff's § 1983 claim against said defendants, assuming without deciding that sufficient state action has been shown, there was no act on the part of said defendants which deprived plaintiff of any legal or constitutional right, privilege, or immunity. As to plaintiff's § 1985 claim against said defendants, there was no evidence of a conspiracy; nor has the Court found that plaintiff was falsely accused of any act, or caused to be terminated because of her race.

The Court has pendant jurisdiction over Counts V and VI of the complaint. The Court concludes that the reports written by defendant Toomey were not libelous because they were true. *Pulliam v. Bond*, 406 S.W.2d 635, 642 (Mo.1966). The statements made by defendants Toomey and Keene were not slanderous for the same reason. As to Count VI, the Court finds that any interference by defendants Toomey, Keene, and SLU with plaintiff's employment contract was fully justified. As the absence of justification is one element of the tort alleged in Count VI, *Francis Chevrolet Company v. General Motors Company*, 602 F.2d 227, 230 (8th Cir. 1979), plaintiff may not recover on Count VI.

In accordance with the foregoing, judgment will be entered in favor of defendants on all six counts in this action. The Court bifurcated this matter with respect to the issue of attorneys' fees, which have been requested by all parties. However, the Court finds that this action was not frivolous, unreasonable, or groundless, and hence that defendants, although prevailing parties, are not entitled to attorneys' fees under 42 U.S.C. § 1988. *Bowers v. Kraft Foods Corp.*, 606 F.2d 816 (8th Cir. 1979). Defendants' requests for attorneys' fees will therefore be denied.