**CABOT CORPORATION, a corporation, and Mountain Gas Co., a corporation, Plaintiffs,**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA et al., Defendants.**

**Civ. A. No. 71–190 CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Oct. 11, 1971.

F. Paul Chambers, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for plaintiffs.

John E. Lee, Chief Counsel, Public Service Comm., Charleston, W. Va., for defendants.

## OPINION

FIELD, Chief Judge.

In this proceeding the plaintiffs ask that the defendants be enjoined from enforcing a certain order of the Public Service Commission of West Virginia entered by that body on August 13, 1971. The defendants have filed a motion to dismiss the complaint, or in the alternative, to grant them summary judgment.

From the allegations of the complaint which presently are not controverted, it appears that Cabot and Mountain are Delaware corporations with their principal places of business in Massachusetts and each of which is authorized to engage in business in the State of West Virginia. Each of the plaintiffs is a "Natural Gas Company" as defined by the Natural Gas Act (15 U.S.C. § 717 et seq.). The defendant, Public Service Commission of West Virginia, is an administrative agency created by West Virginia Code, Chapter 24, Articles 1–5, and is empowered by said statutes to regulate certain activities of public utilities in West Virginia. The personal defendants are the chairman and members of the West Virginia Commission.

Cabot and Mountain have entered into an agreement whereby Cabot proposes to transfer certain facilities to Mountain to be used by the latter incident to the transportation and sale of natural gas in interstate commerce, this agreement being conditioned on the issuance of a certificate of public convenience and necessity by the Federal Power Commission, an application for such certificate having been filed by Mountain with the FPC on June 23, 1971 in Docket No. CP 71–310. Since that proceeding anticipates the transfer of facilities from Cabot to Mountain, Cabot has petitioned to intervene in that Docket. A copy of Mountain's application to the FPC was delivered to the chief counsel of the West Virginia Commission on June 23, 1971. Among other facilities which Cabot proposes to transfer to Mountain are Cabot's X–1 storage pool, transmission and other facilities, which upon the application of Cabot were previously declared by the FPC in Opinion No. 564, Docket CP 68–176, to be exempted from

FPC regulation under Section 1(c) of the Natural Gas Act. 15 U.S.C. § 717.

Mountain's application to assign Cabot's storage pool and other facilities is now pending before the FPC in Docket No. CP 71–310, and on May 10, 1971, Mountain entered into an Exchange Agreement with Consolidated Gas Supply Corporation, conditioned upon the granting of the certificate to Mountain by the FPC. Under the terms of this agreement the transmission facilities which Mountain proposes to acquire from Cabot will be used to transport gas which in part originates outside the State of West Virginia for delivery to Consolidated for its use in part outside of West Virginia, thereby resulting in the use of said facilities for the transmission of gas in interstate commerce. On July 20, 1971, Mountain entered into another contract with Consolidated, a purchaser for resale in interstate commerce, also conditioned upon the issuance by the FPC of the certificate to Mountain. Under the terms of this agreement Mountain is to sell to Consolidated winter gas from the subject storage pool commencing November 1, 1971, in the amount of at least 1,000,000 MCF per year at a rate not greater than 6,000 MCF per day, this agreement being filed as a supplement to Mountain's application in FPC Docket No. CP 71–310. Also conditioned upon the issuance to Mountain of the certificate by the FPC in Docket No. CP 71–310, Cabot has agreed to assign to Mountain a contract whereby Cabot is required to purchase 9,000 MCF of gas from Tennessee Gas Transmission Company, such gas originating in the southwestern United States.

On August 6, 1971, the West Virginia Commission filed a notice to intervene in Docket No. CP 71–310, and thereby submitted itself to the jurisdiction of the Federal Power Commission and became a party to that proceeding. Thereafter on August 13, 1971, the West Virginia Commission issued an order directed to Cabot in Case No. 7256, this being the order of which the plaintiffs complain in the present case. This order, in effect, recites that the Commission takes cognizance that Mountain, a wholly owned subsidiary of Cabot, has filed with the Federal Power Commission in FPC Docket No. CP 71–310 an application for a certificate of public convenience and necessity which would, among other things, authorize the acquisition of certain facilities from Cabot by Mountain and its operation thereof. The order states that a large part of these facilities presently owned by Cabot, including the X–1 storage pool, were declared exempt from FPC jurisdiction in Opinion No. 564 in Docket No. CP 68–176, and are subject solely to the jurisdiction of the West Virginia Commission.

The order then observes that Cabot has not filed with the West Virginia Commission an application for approval of the proposed transfer of such facilities, as required by West Virginia Code, Chapter 24, Article 2, Section 12, and has indicated that it does not intend to do so; and accordingly the West Virginia Commission requires that Cabot be made a respondent to the proceeding and appear and show cause why it should not be required to obtain approval of the West Virginia Commission before transferring any of said property to Mountain. The order concludes that Cabot " * * * shall not transfer any of said utility property to Mountain Gas Co. or to any other transferee until further order of the Commission [West Virginia]." A copy of this order was sent by the West Virginia Commission to the Secretary of the FPC with a request for a hearing in Docket No. CP 71–310 or, in the alternative, a stay of further proceedings of the Federal Power Commission pending further action by the West Virginia Commission pursuant to its order of August 13, 1971.

In their motion to dismiss the defendants primarily challenge the jurisdiction of the Court to entertain this action. The complaint alleges that the action arises under the Commerce Clause and the Supremacy Clause of the United

States Constitution as well as the Due Process Clause of the Fourteenth Amendment. It is further alleged that the action arises under the Natural Gas Act, 15 U.S.C. § 717 et seq., and that this Court has jurisdiction thereof under 28 U.S.C. §§ 1331 and 1337. It is further alleged that as to each of the plaintiffs the amount in controversy exceeds, exclusive of interest and costs, the sum of $10,000.

If I accept the validity of the jurisdictional allegations, it would appear that there are no statutory restraints which would preclude this Court's jurisdiction in this case. The proscription of the Johnson Act of 1934, 28 U.S.C. § 1342, would not apply to the instant case since it is not one which affects public utility *rates*, and additionally, jurisdiction herein is not "based solely on * * * repugnance of the order to the Federal Constitution." The Johnson Act of 1937, 28 U.S.C. § 1341, is inapplicable since that Act addresses itself solely to injunctions directed at the assessment, levy or collection of taxes under state law. Nor does it appear that this is a case which would require the convening of a district court of three judges under 28 U.S.C. §§ 2281 and 2282, for the relief sought by the plaintiffs here is not based upon the unconstitutionality of any state statute but asserts only that the action of the state Commission and underlying state statute are in conflict with the operation of a valid federal statute. See Swift & Company v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Finally, the Anti-Injunction Act of 1793, as amended, 28 U.S.C. § 2283, is inapplicable, since that Act is by its terms limited to "proceedings in a state court" and not to proceedings before state administrative agencies.

■ It now appears to be well settled that where a state regulatory agency invades a regulatory area which has been preempted by federal legislation, the federal courts will enjoin such invasive action. See Capital Service, Inc. v.

NLRB, 347 U.S. 501, 74 S.Ct. 699, 98 L. Ed. 887 (1954); Public Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943).

■ The application of the West Virginia statute as contended for by the defendants would, in effect, recognize that the state Commission possesses a veto power over the regulatory authority of the FPC, and would "invalidly invade the federal agency's exclusive domain." Northern Natural Gas Co. v. State Corp. Commission of Kansas, 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963). The Natural Gas Act has preempted the regulation of interstate transportation and sale for resale of natural gas, and this preemption extends not only to direct regulation but to indirect regulation as well. It is unnecessary to indulge in a review of the decisions in this area for the breadth of federal preemption and the ramifications thereof were considered in depth and clearly delineated by Judge Winter in his opinion in the case of Public Service Commission of W. Va. v. Federal Power Commission, 4 Cir., 437 F.2d 1234 (1971). That case involved substantially the same litigants as the present case and while it, of course, arose in another context it basically involved an analogous conflict between the appropriate areas of federal and state regulation with respect to the natural gas industry. In that case Judge Winter made the following observations which, in my opinion, are equally applicable to the present controversy (437 F.2d 1234, 1237):

"PSC, nevertheless, contends that the transfer was ineffective because it had not granted Cabot approval for the transfer. * * * It argues that Cabot is a public utility and that Cabot's lease of a part of its pipeline is literally within the statute. Recognizing the problem of preemption by federal law, PSC argues that there is a strong Congressional policy against invalidating state regulatory schemes and that there is here no conflict be-

tween West Virginia's public utility regulatory statute and the Congressional scheme of regulation embodied in the Natural Gas Act. It contends that state regulation here is justified by the state's interest in assuring that Cabot realize reasonable compensation in its arrangement with Mountain, and by the danger that Cabot might 'shift beneficial revenues and tax savings to its nonregulated affiliates and escape flowing them through to benefit West Virginia utility customers.' Although Cabot may be a public utility within the meaning of the West Virginia statute, we disagree that PSC may exercise its regulatory authority here.

"In granting Mountain a certificate of public convenience and necessity, FPC acted under § 7(c) and (e) of the Act, 15 U.S.C.A. § 717f(c) and (e). * * * Nowhere in that section, or elsewhere in the Act, is found any provision which requires FPC to act jointly with a state utility commission, or to condition its grant of authority or approval upon the action of a state regulatory body, in the respects with which we are concerned.

> \*     \*     \*     \*     \*     \*

"We think that the principles stated in the *Northern Natural Gas* case govern this case. The subject with which we are concerned is the right to transport and to sell gas in interstate commerce. The right to acquire and the right to operate an interstate pipeline is an essential adjunct thereto. Under the Act, these matters are committed to the jurisdiction of the FPC. As the FPC has recently pointed out in a case involving the transfer, abandonment, and construction of various interstate pipelines, any requirement of local utility commission approval, in addition to FPC approval, would create confusion. (Citing cases.) If the acquisition of rights in an interstate transportation line were subject

to the veto of every state regulatory agency along the line, a single agency could seriously impair interstate commerce and the interests protected by the Act and prevent FPC from performing its statutory duties."

■ In the light of the foregoing observations it is quite obvious that this is a proper case for injunctive relief assuming that the traditionally equitable principles with respect to the issuance of injunctions are found to be present. In my opinion, such requisite principles are satisfied in this case. It is clear that the defendants intend to continue to exercise unlawful control over the plaintiffs; that such unlawful control has or will cause irreparable injury to the plaintiffs; and assuredly the plaintiffs will suffer more harm from the denial of injunctive relief than will the defendants from its issuance. The Federal Power Commission has declined to stay the proceeding pending before it and has assigned Mountain's application to a trial examiner for hearing. Following such a hearing, it is quite possible that the FPC may act at any time to issue a certificate of public convenience and necessity requiring the transfer of the subject facilities to Mountain. Suffice it to say that to permit the West Virginia Commission order to stand as an obstacle to the plaintiffs' compliance with any such order of the federal agency involves substantially more than $10,000, exclusive of interest and costs, for each of the plaintiffs, aside from an immeasurable amount of damage which would result from this confusion of regulatory authority.

Accordingly, the defendants will be enjoined and restrained from enforcing the order issued by the Public Service Commission of West Virginia on August 13, 1971, and any appropriate preliminary injunctive relief which might be necessary to effect the rulings reflected in this opinion will be issued.