AMERICAN MOTORS SALES CORPO-
RATION, Plaintiff-Appellee,

v.

James F. RUNKE, Commissioner, Bureau of Vehicle Regulation, and Bureau of Vehicle Regulation, Department of Transportation, and Department of Transportation, Commonwealth of Kentucky, Defendants-Appellants.

No. 82–5263.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 17, 1983.

Decided May 10, 1983.

Gary L. Dailey, Office of Gen. Counsel, Dept. of Transp., Dandridge Walton, (argued), Frankfort, Ky., for defendants-appellants.

Edward H. Stopher (argued), Robert E. Stopher, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., for plaintiff-appellee.

Before KEITH, KENNEDY and WELLFORD, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant Runke, Commissioner of the Bureau of Vehicle Regulation of the Kentucky Department of Transportation, appeals an order of the District Court granting a preliminary injunction prohibiting the enforcement of provisions of the Kentucky Automobile Marketing Act, Ky.Rev.Stat. Ann. §§ 190.010–190.080, 190.990 (Baldwin 1982) [1] against the American Motors Sales Corporation. We affirm the District Court's judgment but remand with directions to modify the injunctive relief granted.

The appellee, American Motor Sales Corporation (American),[2] is licensed under Kentucky law to distribute American Motors, Jeep and Renault vehicles, parts and accessories to thirty-two dealers in Kentucky. American has, since as early as 1973, promoted sales to dealers in Kentucky by offering "incentive" programs such as sales contests, rebates and wholesale price reductions. On January 22, 1982, in response to a complaint by Gambrel & Madon Motor Company, Inc.,[3] the appellant Runke issued a notice of a hearing before the Kentucky Department of Transportation, Bureau of Motor Vehicle Registration. This notice ordered American to "show cause" why its license to distribute vehicles, parts and accessories in Kentucky should not be revoked for violations of the state's Automobile Marketing Act, Ky.Rev.Stat. § 190.040.

This hearing was postponed until March 29, 1982. In the interim American filed this action on March 22, 1982 seeking injunctive relief and a declaratory judgment that the Kentucky statute was unconstitutional under the Supremacy and Commerce Clauses of the United States Constitution. After an adversary hearing on March 23, the District Court issued a temporary restraining order enjoining the defendants from conducting any hearing "or other proceeding" or otherwise attempting to enforce Ky.Rev. Stat. §§ 190.010–190.080 or Ky.Rev.Stat. § 190.990. The court subsequently held a full hearing on the issues raised and granted the preliminary injunction now appealed.

Runke raises three issues on appeal: (1) whether the injunction was prohibited under the Anti-Injunction Act, 28 U.S.C. § 2283 (1976); (2) whether the District Court abused its discretion in issuing the preliminary injunction; and (3) whether the

1. The Kentucky legislature revised substantial portions of the state's Automobile Marketing Act in 1982. None of the specific provisions at issue in this case were affected by those revisions. *See* Ky.Rev.Stat. & R.Serv. 1156–81 (Baldwin 1982).

2. Appellee American, which is a wholly owned subsidiary of American Motors Corporation, distributes and sells American Motors, Jeep and Renault vehicles and parts nationwide to some 2,000 dealers.

3. Gambrel & Madon, whose motion to intervene in this suit was denied by the District Court, had previously filed an action in federal district court alleging that American had violated the federal Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225 (1976). That suit is apparently still pending.

**204**

District Court abused its discretion in refusing to abstain under the *Pullman* or *Younger* doctrines.[4]

The Anti-Injunction Statute

■ Appellant Runke urges that the Anti-Injunction Act, 28 U.S.C. § 2283 (1976), prohibits the District Court from enjoining the state administrative hearing at which the Kentucky act was to be enforced. This jurisdictional challenge is without merit. Section 2283 by its terms only prohibits federal courts from enjoining

state *court proceedings.*[5] At least two courts including the Sixth Circuit have expressly stated that this prohibition does not extend to state administrative proceedings. *Taylor v. Kentucky State Bar Association,* 424 F.2d 478, 482 (6th Cir.1970); *Engleman v. Cahn,* 425 F.2d 954, 958 (2d Cir.1969) *cert. denied,* 397 U.S. 1009, 90 S.Ct. 1238, 25 L.Ed.2d 422 (1970). *See also Erdmann v. Stevens,* 458 F.2d 1205, 1213 n. 3 (2d Cir. 1972) (concurring opinion); *Cabot Corp. v. Public Service Comm'n of W.Va.,* 332 F.Supp. 370, 373 (S.D.W.Va.1971).[6]

4. *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

5. The United States Supreme Court has recognized this distinction but expressly declined to decide whether it is "tenable in all circumstances—even where the administrative proceeding is adjudicatory or quasi-judicial in character . . . ." *Gibson v. Berryhill,* 411 U.S. 564, 573 n. 12, 93 S.Ct. 1689, 1695 n. 12, 36 L.Ed.2d 488 (1973). *Cf. Roudebush v. Hartke,* 405 U.S. 15, 19–23, 92 S.Ct. 804, 807–809, 31 L.Ed.2d 1 (1972) (holding that § 2283 does not prohibit a federal court injunction of a state court involved in a non-judicial function). The distinction is clearly tenable in the present case. Here, the "Show Cause" hearing before the Kentucky Bureau of Motor Vehicle Regulation is neither sufficiently adjudicative nor quasi-judicial in character that the question posed in *Gibson* must be answered. The state is both the adversary and decision maker. The Bureau's decision, while it must evaluate facts and apply them to legal standards, is nonetheless essentially an executive function; that is, administering the provisions of Ky.Rev.Stat. § 190.040 as a licensing agency. Under these circumstances we think it clear that § 2283 has no application to the facts at bar.

6. There are three exceptions provided in § 2283. One of these exceptions, express authorization by Congress, is asserted as an alternative basis by American for disregarding § 2283's prohibition in this case. American asserts that its action is one to redress constitutional rights pursuant to § 1983. While it is true that § 1983 actions provide the cited exception in § 2283, *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), American neither pleaded nor argued a § 1983 basis for its suit until this appeal. If the District Court so chooses it could allow American to file an amended pleading upon remand. It would be fruitless to apply § 2283 under these circumstances where a party has alleged sufficient facts to make out a claim under § 1983

and upon remand would amend its pleadings to provide the needed statutory exception. Thus, even were we to find that § 2283 applied to the state administrative proceeding before us, judicial economy would counsel against its fruitless application. For this same reason the doctrine of exhaustion does not preclude the appellants' constitutional challenge to the Kentucky Act. *See Patsy v. Board of Regents of the State of Florida,* —— U.S. ——, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982) (exhaustion of state administrative remedies not required for § 1983 actions). Even were this § 1983 basis for appellants' challenge absent or entirely neglected by the parties, exhaustion would be inappropriate under the present circumstances. None of the reasons underlying the exhaustion requirement, such as agency expertise, administrative autonomy, development of a particular factual record or preservation of a state-created administrative remedy and the integrity of the administrative process, are present. *See McKart v. United States,* 395 U.S. 185, 193–195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *Patsy v. Florida International University,* 634 F.2d 900, 903 (5th Cir.1981) (en banc), *rev'd sub nom. on other grounds, Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Moreover, the essential considerations which caution against federal court intervention in a dispute pending before a state administrative proceeding—the *Younger* and *Pullman* concerns of federalism and comity—do not support such an abdication of jurisdiction in the case at bar. Exhaustion in any case is not required where the administrative proceeding cannot result in a remedy adequate to the wrong alleged or will not resolve the constitutional question raised. *Patsy,* 634 F.2d at 903 (citing cases); *Goar v. Civiletti,* 688 F.2d 27, 29 (6th Cir.1982). Finally, in a case such as this, where no clear statutory or judicially imposed reasons to require exhaustion exist, we deem the agency's failure to raise the issue as conclusive. *Cf. Mathews v. Diaz,* 426 U.S. 67, 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 320, 96 S.Ct. 893, 895, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi,*

Runke argues, however, that in *United States v. Ohio,* 614 F.2d 101, 104 (6th Cir. 1979), a panel of this Circuit established that the distinction between state judicial and administrative proceedings is without legal significance under the federal anti-injunction statutes. We disagree. First, *United States v. Ohio,* did not involve § 2283 but rather the Anti-Tax Injunction Statute, 28 U.S.C. § 1341 (1976). Although both statutes reflect congressional disapproval of federal judicial inference with state judiciaries, they do so in different ways. Section 2283 by its terms only prohibits federal courts from enjoining state *court* proceedings. Section 1341 on the other hand restricts the district courts from enjoining or restraining the "assessment, levy or collection" of any state tax where a "plain, speedy and efficient remedy" is *available* in the state courts.[7] Since the assessment, levy or collection of state taxes is almost always undertaken administratively § 1341 clearly contemplates a ban on injunctions against state administrative tax proceedings so long as an adequate state court remedy exists. *See Rosewell v. La-Salle National Bank,* 450 U.S. 503, 512, 101 S.Ct. 1221, 1228, 67 L.Ed.2d 464 (1981); *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). Second, the Court in *United States v. Ohio* actually refused to consider § 1341, since it was first raised as a defense on appeal. Rather, the Court rested its decision and distinction between administrative and judicial proceedings on the *Pullman* and *Younger* abstention doctrines. 614 F.2d at 103–104. Third, in the context of abstention the Court found no distinction between a state court and the particular administrative body sought to be enjoined because that administrative body was well suited to *adjudicating*

the issues of state law involved. The State of Ohio had specifically designated this body, the tax appeals board, to adjudicate state tax law disputes *including constitutional questions.* The present case in contrast, involves a primarily executive administrative proceeding. Runke's reliance on *United States v. Ohio* is, therefore, misplaced.

Abuse of Discretion in Granting the Preliminary Injunction

The standard of review on appeal from a preliminary injunction is whether the District Court abused its discretion. *Adams v. Federal Express Corporation,* 547 F.2d 319, 322 (6th Cir.1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977). There are four factors to be considered in determining whether the grant of a preliminary injunction was an abuse of discretion: (a) Substantial likelihood of success on the merits; (b) likelihood of irreparable injury; (c) absence of substantial harm to other parties; and (d) protection of the public's interest. *Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

In this case the District Court did not abuse its discretion in granting the preliminary injunction. American demonstrated a substantial likelihood of success on the merits in that the Kentucky act enjoined establishes a prohibition which irreconcilably conflicts with provisions in a federal act governing the same area of conduct. The federal Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221(e), expressly authorizes "recommendation, endorsement, exposition, persuasion, urging or argument" by a distributor of motor vehicles.[8] The section of the Kentucky statute challenged by American prohibits the sale in Ken-

422 U.S. 749, 766–67, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975); K. Davis, Administrative Law Treatise § 20.14 (1982 Supp.).

7. Section 1341 provides:
The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

8. The act outlaws dealings between a distributor and dealer not undertaken by the distributor in "good faith." *See* § 1222. Recommendation, endorsement, exposition, persuasion, urging and argument are specifically excluded by § 1221(e) from those things which might constitute a lack of "good faith."

tucky[9] of any vehicle, parts or accessories by a manufacturer or distributor who:

(m) Being a manufacturer of motor vehicles, factory branch, distributor, field representative, officer, agent or any representative whatsoever of such motor vehicle manufacturer or factory branch, who has induced or coerced or attempted to induce or coerce any automobile dealer to accept delivery of any motor vehicle or vehicles, parts or accessories therefor, or any other commodities which shall not have been ordered by said dealer;

(n) Being a manufacturer of motor vehicles, factory branch, distributor, field representative, officer, agent, or any representative whatsoever of such motor vehicle manufacturer or factory branch, who has attempted to induce or coerce or has induced or coerced, any automobile dealer to enter into any agreement with such manufacturer, factory branch or representative thereof, or to do any other act unfair to said dealer, by threatening to cancel any franchise existing between such manufacturer, factory branch or representative thereof and said dealer: . . . .

As the District Court recognized, the conflict between these statutes arises over the use of the term "induce" in the Kentucky act. The federal act would allow "persuasion" while the state act prohibits "inducements." Yet, these terms are synonymous. The District Court found that this conflict presents a substantial likelihood that the

Kentucky statute would be deemed unconstitutional on the merits under the Supremacy Clause.[10]

In response to this conclusion Runke argues that no actual conflict exists between the state and federal provisions. Runke points out that the state statute only prohibits a distributor from inducing a dealer to *accept delivery of unordered* merchandise. Section 1221(e) of the federal act, Runke urges, merely specifies acts which do not "per se" constitute bad faith by a distributor. Under this reasoning Kentucky's prohibition against inducing acceptance of delivery of unordered merchandise is a narrow category of behavior which falls outside the federal act's more general proviso. Insofar as the "inducements" covered by the Kentucky act are concerned, Runke is correct; only inducements to accept delivery of unordered merchandise are prohibited by the statute's terms and not inducements in general. Moreover, it is true that unsolicited shipments and attempts to force acceptance of unordered merchandise is a distributor practice probably prohibited under the federal act. *See David R. McGeorge Car Co., Inc. v. Leyland Motor Sales, Inc.,* 504 F.2d 52, 56–57 (4th Cir. 1974); *American Motor Sales Corporation v. Semke,* 384 F.2d 192, 196 (10th Cir.1967); H.Rep. No. 2850, 84th Cong., 2d Sess. 4, *reprinted in* 1956 U.S.Code Cong. & Ad. News 4596, 4603.

This does not, however, resolve the apparent conflict between the two statutes. The federal act specifically authorizes "persuasion" by automobile distributors, 15 U.S.C. § 1221(e), and only prohibits *coercive* be-

---

**9.** The Kentucky act also provides criminal penalties. Ky.Rev.Stat. § 190.990.

**10.** The District Court apparently also relied on the Kentucky statute's likely unconstitutionality as an unreasonable burden on interstate commerce. Such reliance is misplaced. The federal act contains an endorsement of state laws regulating dealer-distributor relationships so long as not irreconcilable with the federal provisions. 15 U.S.C. § 1225 provides that: "This chapter shall not invalidate any provision of the laws of any state except insofar as there is a direct conflict between an express provision of state law which cannot be reconciled."

The federal statute thus reveals apparent congressional approval of at least those state regulations which do not directly conflict with federal law. Under these circumstances and absent any evidence that the state provisions place any direct burden on interstate commerce or any incidental burden which is "clearly excessive in relation to putative local benefits" a finding of unconstitutionality on these grounds would be unwarranted. *See Martin-Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 566 (6th Cir.1982), quoting, *Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

havior. *See Kingsport Motors, Inc. v. Chrysler Motors Corp.*, 644 F.2d 566 (6th Cir.1981); *Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d 683, 685–86 (6th Cir.1976). Coercion must include "a wrongful demand which will result in sanctions if not complied with." *Fray*, 536 F.2d at 685, quoting, *Ship & Shores Motors, Inc. v. British Leyland Motors Inc., et al.*, 74–1 CCH Trade Cas. ¶ 775,102 (D.N.J.1974). The Kentucky act, in contrast, prohibits distributors from "inducing" or "attempting to induce" dealers to act, albeit in a narrow category of behavior. The dictionary meaning of induce is synonymous with persuasion.[11] Neither term involves the coercive aspect required by the federal act and indeed necessarily implies its absence. To induce someone is to persuade them or urge them to behave in a certain manner. Thus, induce and persuade are synonymous terms representing an essential element of commercial speech specifically protected under federal law. Kentucky's prohibition presents an irreconcilable conflict with this federal protection. While the state could clearly prohibit "a wrongful demand" that a dealer accept delivery of unordered merchandise or face sanctions, it may not, absent such coercion, prohibit mere inducements by the distributor urging dealers to accept that merchandise. In light of this apparent conflict between Kentucky and federal law the District Court correctly found that American has a substantial likelihood of success on the merits.

The final three elements required for injunctive relief are equally evident. A likelihood of irreparable injury to American is present in that enforcement of the Kentucky act's prohibition would halt all supplies of American Motors, Jeep and Renault products into Kentucky. American sold some 27,000 million dollars worth of products in Kentucky in 1981. Any disruption of this product flow would severely undermine American's competitive position in the market for automobile products—a position which might never be regained. Kentucky

does not argue to the contrary. Nor does Kentucky argue that it will suffer substantial harm if the injunction is upheld. Since no harm is asserted, we presume that it does not exist. Finally, it is manifest that the public's interest, insofar as the continuing sales of American Motors, Jeep and Renault products are concerned, favors the grant of a preliminary injunction during the pendency of this litigation. The state again does not argue to the contrary. Under these circumstances it is clear that the District Court did not abuse its discretion in issuing the preliminary injunction.

Abstention

■ Runke's final argument is that the District Court should abstain in this case in order that Kentucky be given an opportunity to construe its statute in a constitutional manner. This argument clearly fits within the *Pullman* abstention doctrine which requires a federal court to abstain pending state court determination of potentially dispositive issues of state law. *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See Moore v. Sims*, 442 U.S. 415, 428–31, 99 S.Ct. 2371, 2379–2381, 60 L.Ed.2d 994 (1979) (summarizing the *Pullman, Younger* and *Burford* doctrines of abstention). The argument is, however, unpersuasive. If a challenged state law is clear and unambiguous; that is, not fairly subject to a state court interpretation that will render it constitutional, the District Court should not abstain. *Babbitt v. United Farm Workers*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895 (1979); *Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973); *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965). *Pullman* abstention is not appropriate where the challenged state statute is not "susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question." *Babbitt*, 442 U.S. at 306, 99 S.Ct. at 2312. *See Martin-Marietta Corporation v. Bendix Corporation*, 690 F.2d 558, 563 (6th Cir.1982).

11. "Persuade. 1. to prevail on (a person) to do something. 2. to induce to believe; convince.... Syn. 1. urge, influence, entice, im- pel. PERSUADE, INDUCE, CONVINCE...." The Random House College Dictionary 991 (1st rev. ed. 1980).

In this case the Kentucky statute is clear and unambiguous on its face. There can be no saving interpretation of the term "induce" in that only coercive behavior may be prohibited by state law within the bounds of the federal statute. The Kentucky courts could not reasonably construe "induce" to require coercion because such a construction would contradict the plain meaning of the word and, since coercion is already explicitly prohibited in the statute, render it superfluous. Only judicial reconstruction of the statute, excising the word induce, could reconcile Ky.Rev.Stat. § 190.040(m) and (n) with § 1221(e) of the federal act.[12] Such a severance, even if the Kentucky courts were in fact empowered under state law to undertake it,[13] could accomplish no more than a narrowly constructed injunction by the District Court. In either case, appellant Runke would be prohibited by the Supremacy Clause from enforcing Ky.Rev.Stat. § 190.040(m) and (n) to the extent that those provisions purport to forbid "inducement" by an automobile distributor.

Moreover, it does not appear that the state administrative agency which must initially determine whether to revoke American's license in Kentucky has the authority under state law to undertake the required revision of Ky.Rev.Stat. § 190.040(m) and (n). Cf. *Portwood v. Falls City Brewing,* 318 S.W.2d 535 (Ky.1958) (the Kentucky Alcohol and Beverage Control Board has no authority to revise state law). Nor would it appear that such an administrative agency, being executive in nature, is properly constituted to hear American's constitutional challenge in the first instance. The Kentucky statute does provide for appeal to the state court from the agency's determination and American's constitutional claims would eventually gain an adequate hearing in those forums. However, the unavoidable delay inherent in that appeal process renders such a remedy inadequate under the present circumstances. We agree with American that such delay would intolerably chill it in the exercise of its first amendment rights to free speech. While American's speech in this case is primarily commercial in nature[14] and thereby not subject to all of the traditionally stringent protections of the first amendment, it is nevertheless entitled to substantial protections. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Under the present circumstances where a state statute is patently unconstitutional, the impingement of free commercial speech incurred by delay in state court

12. It is not, of course, within the federal court's authority to construe and narrow a state statute challenged on federal constitutional grounds. *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). *See also Record Revolution No. 6 v. City of Parma,* 638 F.2d 916, 926 (6th Cir.1980).

13. Kentucky would appear to follow the traditional rule that its courts may not rewrite legislative enactments contrary to manifest legislative intent in attempting to construe a statute in a constitutional manner. *See, e.g., Chapman v. Chapman,* 498 S.W.2d 134 (Ky.1973); *Board of Education of Warren City v. Fiscal Court,* 485 S.W.2d 752, 757 (Ky.1972) (concurring op.) *Board of Registration v. Hallahan,* 485 S.W.2d 759, 763 (Ky.1972) (dissenting op.) Since Ky. Rev.Stat. § 190.040(m) and (n) are unambiguous and the conflict with federal law unavoidable absent literal rewriting of the statute's language, it seems extremely doubtful that the Kentucky courts would undertake such an exercise. This is a question of state law which we need not decide, however, since the only possible saving construction by the state courts would be identical to the injunctive relief issued by the federal district court.

14. Certain aspects of American's speech are arguably distinguishable from the advertisement of prices and services previously subjected to Supreme Court analysis in commercial speech cases, such as *Virginia Board of Pharmacy,* and *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). It is, however, far more analogous to these forms of speech than the ideological communications afforded full first amendment protections. *See Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Since we find that the delay engendered by an unnecessary and fruitless abstention in this case would impermissibly infringe vindication of American's particular commercial speech, this question of degree need not be addressed.

adjudication of the issue further counsels against federal court abstention. The state proceedings, in this sense, simply do not present American with an adequate opportunity to challenge the offending state statute. *Cf. Sims,* 442 U.S. at 432, 99 S.Ct. at 2381. The District Court properly exercised its discretion in refusing to abstain. *See Harman,* 380 U.S. at 534, 85 S.Ct. at 1181.

The Injunction

■ While the District Court properly refused to abstain and correctly determined that injunctive relief was appropriate in this case, the relief ordered was overly broad. The court's preliminary injunction enjoined Runke and the Kentucky Department of Transportation, Bureau of Motor Vehicles from enforcing any part of the Kentucky Automobile Dealers' Act. This was unnecessary. American has only challenged Kentucky's prohibition against "inducements." The offending language is only found in two provisions—Ky.Rev.Stat. § 190.040(m) and (n)—of Kentucky's fairly comprehensive statute regulating the relationship of automobile manufacturers and distributors with state dealers. On remand the District Court is directed to revise its injunction to remedy only the precise constitutional infirmity which exists.

Affirmed and remanded with directions.